DES MOINES PLUMBING & HEATING COMPANY, Appellee, v. S. M. MAGARIAN et al., Appellants.

**EVIDENCE:** Opinion Evidence—Explanation of Architectural Drawings. The meaning of marks and characters unintelligible to the layman, appearing on an architectural drawing, may be shown by a witness familiar with such matters. So held as to characters which indicated the presence of a sewer.

**CONTRACTS:** Building Contracts—Requirement of Written Order for Extra Work—Effect. A building contractor may not recover for extra work performed under the oral advice of the architect when the contract specifically required a written order in such cases. Especially is this true when the owner lived in a distant part of the state and had no knowledge of the extra work until after it had been performed.

Headnote 1:   22 C. J. pp. 645, 646 (Anno.)   Headnote 2:   9 C. J. pp. 845, 846.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 16, 1926.

ACTION to recover for extra work growing out of a plumbing contract. From a judgment in favor of plaintiff, the defendants appeal.—*Affirmed in part; reversed in part.*

*Tomlinson & Maley,* for appellants.

*Strock, Cunningham, Sloan & Defley,* for appellee.

ALBERT, J.—Appellants, who are residents of Knoxville, Iowa, are the owners of certain lots on Cottage Grove Avenue in the city of Des Moines. They decided to build a business block on said lots, and the plans and specifications therefor were drawn by one Roy W. Leibsle. Appellee herein was the successful bidder for the plumbing work. A contract therefor was entered into between appellants and appellee on May 19, 1924, providing that appellee should receive $882 for the performance thereof. When the general contractor had excavated for the basement, he was troubled with water flowing into the excavation. When appellee was called upon to make the sewer connection to relieve this situation, it discovered that there was no sewer in Cottage Grove Avenue, the street immediately in front of the building, and so reported to the architect, Leibsle. Upon investigation at the city hall, appellee discovered that there was a sewer in Twenty-second Street, which lies immediately east of the block in which appellants' property lies. It claims that the architect advised it to connect with the sewer on Twenty-second Street. This necessitated the furnishing of material and laying of 112 feet more of sewer than would otherwise have been necessary, had there been a sewer in Cottage Grove Avenue. It is for additional material and labor required for this extra sewerage that this action is brought. Although originally there were other matters involved, they have all been eliminated.

At the time bids were received on the contract, there was furnished a blue print of the proposed building, showing the adjacent street.   On the blue print appear three dotted lines, running directly from the building into the street in front thereof.   Appellee introduced as witnesses a number of men experienced in this line of work; and, over objection, they were permitted to testify that these dotted lines indicated to them that there was a city sewer in the street in front of the building. Some of them filed bids for the work in the first instance, and so interpreted the blue print at the time they made their bids. Appellants claim that their testimony should not have been admitted; but, as we view the plat before us, we are satisfied that one unacquainted with this kind of work and such blue prints would have no idea whatever of the meaning of these lines.   An intelligent idea thereof could only be obtained from those who are familiar with this class of work and the blue prints which usually accompany it.   The technique of architectural drawings and the technical terms, signs, and characters therein are unintelligible to the uninitiated, and we know of no rule which would prevent one experienced in that line of work from testifying to their meaning and how they are understood in the profession. In *Wilson v. Delaney,* 137 Iowa 636, we said that parol evidence is admissible to explain all the technical terms and phrases used in a local or specific sense.   In *Cameron v. Fellows,* 109 Iowa 534, we held that parol evidence was admissible to show the conventional meaning of abbreviations, or the habits of parties in using particular abbreviations for certain purposes, though not to show the intention in making use of them.   In *Kossuth County St. Bank v. Richardson,* 141 Iowa 738, we held that such testimony was admissible to explain obscure figures and abbreviations which appear in accounts introduced in evidence. In *Wetmore v. Marsh,* 81 Iowa 677, it is said that, when an account or statement is written in language peculiar to trade, and is unintelligible to the court, parol evidence is admissible to interpret it.   Under this line of reasoning in the above cases, we can see no reason why this testimony was not admissible.   It therefore follows that, if this testimony was believed,—and it is very puissant,—the blue print itself carried with it the repre-

*(margin note:)* 1. EVIDENCE: opinion evidence: explanation of architectural drawings.

sentation that there was a city sewer in Cottage Grove Avenue.

2. CONTRACTS: building contracts: requirement of written order for extra work: effect.

It is conceded as a fact, however, that there was no sewer there. It is equally conceded that the additional sewerage was put in to connect the building with the sewer on Twenty-second Street, and, unless there is some other reason, it is apparent that the appellee should be paid for material and work done in putting in the extra sewerage. Appellants, in response to this, rely upon their contract, part of which follows:

"No change shall be made unless in pursuance of a written order from the owner signed or countersigned by the architect, or a written order from the architect stating that the owner has authorized the change, and no claim for an addition to the contract sum shall be valid unless so ordered."

"If the contractor claims that any instructions, by drawing or otherwise, involve extra cost under this contract, he shall give the architect written notice thereof before proceeding to execute the work, * * * No such claim shall be valid unless so made."

The evidence in the case shows that the appellants knew nothing of this matter until after its completion, when the bill was presented to them. It is conceded by the claimant that it had no written order from the architect or the owner to do the work. A reading of the matters of contract between these parties leads to but one conclusion: that the contractor was not to be paid for extras unless those extras were made under written order, as provided in the contract. The owner had the right to stand on his contract, and there is no reason why appellee should recover herein.

The broader equities of the case, however, lead to the same conclusion. As before stated, the property owners were not residents of the city of Des Moines, and knew nothing about the city's sewer system. Appellee has been in the plumbing business for many years here, and says that he could have discovered by inquiry at the city hall whether or not there was a sewer in Cottage Grove Avenue, before he entered into the contract. The general trend of all witnesses who testify on this proposition is that ordinarily, in blue prints of this kind, there is a specific showing where the sewer is located in the street

with which connections are to be made; but all of them admit that there is no such specification on this blue print. It was, therefore, as much the duty of appellee as that of appellant to discover how far this sewer line must be carried, to reach the city sewer. Since it failed so to do, and the facts developed that the sewer was farther from the place of construction of the building than appellee thought, at the time it made the contract, the loss must be its own, and not that of the property owner. Again, appellee testifies that this condition was discovered before it entered into performance of its contract. Having thus acquired this knowledge, the burden was upon it to comply with the terms of its contract, and either refuse to go forward under the contract or make some arrangement with the owner on account thereof; but, since it failed so to do, the loss, if any, must rest upon the appellee, and not upon the property owner. The holding of the district court was otherwise, and is erroneous. The part of the judgment entered below allowing appellee recovery for extra sewerage is reversed. The remainder of the judgment, which was on stipulation, of course will stand.—*Reversed in part; affirmed in part.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.