IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellant, v. J. W. HOPP et al., Appellees.

No. 43124.

APRIL 7, 1936.

Frank C. Byers, Daryl B. Oldaker, and Helen Dennery Lockner, for appellant.

James E. Franken, for appellees.

HAMILTON, J.—On June 16, 1931, plaintiff entered into a written contract with the defendants, being a standard form of agreement between contractor and owner for construction of buildings, issued by the American Institute of Architects, for the construction of a power house at Toledo, Iowa. There was also a second agreement for the erection of a pump house and oil unloading pit. When the construction work was all completed, the defendants owed certain materialmen for material which went into the construction, and these accounts were assigned to plaintiff, upon which accounts it is conceded there was due and owing from the defendants the total sum of $5,691.81. It is also conceded that the amount due from the plaintiff under the original contracts to the defendants under the original contract price for which the defendants should have credit is $1,904, which, but for the claim for extra labor contained in the counterclaim, would leave the balance due the plaintiff as assignee on said accounts of $3,787.81. The brick specified in the original contract was Purington paving brick. When they arrived, they were of a poor quality and not satisfactory to either the contractor or architect and were rejected by the architect. The architect by letter authorized the change in brick from paving to face brick and common brick without additional cost. The building was completed about July, 1932, and turned over to the owner and accepted. There was a claim made at this time for extra work, made necessary because of the change in brick, and the increased cost of labor is alleged in said counterclaim to be $1,410, for which defendants ask credit or counterclaim against the sum of $3,787.81, admitted to be due plaintiff.

Therefore it will be seen that the entire lawsuit is around this item of $1,410, and this is the only matter in controversy. The original contract is the usual stock form and contains the following provision:

"In giving instructions, the Architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered."

Article 16 is as follows:

"Claims for Extra Cost.—If the Contractor claims that any instructions by drawings or otherwise involve extra cost under this contract, he shall give the Architect written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergency endangering life or property, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made."

On June 16, 1931, plaintiff addressed a letter to the defendants as follows:

"Dear Sirs: Until further notice, Mr. A. R. Messenger will be our engineer in charge of construction of our Power House at Toledo, Iowa. You will consult with him and make all reports to him pertaining to your contract for the erection of the above building."

On November 3, 1931, Messenger wrote the defendants as follows:

"Gentlemen: This will be your authority for changing the brick on the Toledo Power House job from Pavers to Purington Commons for back and Purington Rug Face Brick for face *at no additional cost to us above the price as arranged for with the pavers*. (Italics supplied.)

It is not claimed by defendants that there was any other written order from the owner or architect than as contained in the above letters. The contractor in charge of the work testified as follows: "There was never any written order issued, covering any increase in the cost of the labor for the laying of the brick because of the change in the type of brick." Defendants did contend that they had an oral agreement with the architect in reference to the extra work, and that the architect promised to furnish them confirmation in writing, which he never furnished. The architect positively denies that there was ever any talk with reference to extra work or that he ever made any such promise to the defendants or their employees; but states that the only change authorized was that contained in his letter of November 3d, and that said letter was in accordance with an oral understanding with the contractor that such change would involve no additional cost to the owner. The evidence with reference to the oral contract was all objected to and admitted over the objection of the plaintiff. It is the contention of the appellant that the defendants were bound by the terms of the written contract, and could not rely upon an oral agreement with the architect, and that the court erred in admitting testimony with reference to such oral agreement. Also that there was no competent evidence as to the amount or value of the extra work to sustain the allegations of the counterclaim.

We have heretofore had occasion to consider contracts containing similar provisions, and the rule is apparently well settled in this state. In the case of Des Moines P. & H. Co. v. Magarian, 201 Iowa 647, 207 N. W. 750, which was an action to recover for extra work, the language of the original contract in that case was almost identical with the contract in the case at bar, and we held that the owner had the right to stand on his contract. Likewise, in the case of Volquardsen v. Davenport Hospital & S. Sav. Bank, 161 Iowa 706, 709, 141 N. W. 432, 434, the contract expressly provided: .

"There must be no changes made in them (specifications and drawings), nor deviations from them without the written consent of the architects"; and it also declared that "no alterations shall be made in the work except upon written order of the architect."

We held that such provisions were binding on the parties to the contract.

684

In the case of Benson & Marxer v. Brown, 190 Iowa 848, 850, 179 N. W. 81, 82, we find this language:

"Recurring to the absence of written authorization, and to the question of waiver and plea and proof thereon, we have to say: It may be conceded settled law, and to be held in Volquardsen v. Davenport H. & S. Sav. Bank, 161 Iowa 706, 141 N. W. 432, that, where there is an agreement which provides for no change or deviation from the plans and specifications, except upon the written consent and order of the architect, accompanied with a statement of the cost of change, the architect has no authority to make a change, except on these terms, and it may not be made effective against the owner that there was merely oral permission of the architect."

It seems that the question was first raised in this jurisdiction in the case of Chicago Lumber & Coal Co. v. Garmer, 132 Iowa 282, 287, 109 N. W. 780, 782. In that case the contract provision was as follows:

"No alterations shall be made in the work except upon written order of the architects; and the amount to be paid by the owner, or allowed by the contractor by virtue of such alterations to be stated in said order. Should the owner and contractor not agree as to amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in Article 12 of this contract."

We said: "These were made without such written order. The manifest object of such a provision was to cut off all possibility of controversy between the parties by fixing the increased compensation of the contractor in advance and to protect the owner against doubtful claims. Such agreements are uniformly enforced. Abbott v. Gatch, 13 Md. 314, 71 Am. Dec. 635; O'Keefe v. St. Francis' Church, 59 Conn. 551, 22 A. 325; Howard v. Pensacola R. Co., 24 Fla. 560, 5 So. 356; Northern Light Lodge v. Kennedy, 7 N. D. 146, 73 N. W. 524; White v. San Rafael R. Co., 50 Cal. 417; Monarch v. Board of Com'rs of New Orleans, 49 La. Ann. 991, 22 So. 259. This may be waived. Badders v. Davis, 88 Ala. 367, 6 So. 834; Board of Com'rs of Gibson County v. Motherwell Iron, etc., Co., 123 Ind. 364, 24 N. E. 115. * * *

"Even if the architect orally ordered anything additional, this was without authority of the owner, and, in the absence of ratification, was not binding on her. Starkweather v. Goodman, 48 Conn. 101, 40 Am. Rep. 152; Langley v. Rouss, 185 N. Y. 201, 77 N. E. 1168 [7 Ann. Cas. 210]."

That this is the rule adhered to in most jurisdictions is shown by an extensive annotation found in 66 A. L. R. 649.

It therefore follows that the trial court was in error in admitting evidence of the alleged oral agreement with the architect. Furthermore, there is no proof of compliance with Article 16 of the original contract relative to claims for extra costs. Neither is there any proof to support an agreement with the owner with reference to said alleged extra work and no proof of waiver of the terms of the original contract or of ratification of said alleged oral contract with the architect on the part of the owner. There being no competent evidence to support the counterclaim, the court was in error in submitting the issues raised by the counterclaim to the jury, and the motion to direct a verdict in favor of the plaintiff as to the issue raised by the counterclaim should have been sustained. Our holding finds ample support in the authorities above referred to, and we know of no rule to the contrary, and appellee did not see fit to furnish us with an argument, either written or oral. In view of the fact that the case must be reversed for the reasons heretofore indicated, it is unnecessary to consider other matters urged by the appellant.—Reversed.

DONEGAN, C. J. and all Justices concur.