Skeet CHAMBLESS, d/b/a Chambless Painting Company, Appellant,

v.

J. J. FRITCH, GENERAL CONTRACTOR, INC., et al., Appellees.

No. 15654.

Court of Civil Appeals of Texas.

Dallas.

May 13, 1960.

Rehearing Denied June 10, 1960.

Harold W. McCracken, Dallas, for appellant.

H. T. Bowyer, Robert H. Thomas, Bowyer, Thomas, Crozier & Harris, Brundidge, Fountain, Elliott & Bateman, L. E. Elliott, Dallas, for appellees.

DIXON, Chief Justice.

Appellant Skeet Chambless, doing business as Chambless Painting Company, brought suit against appellees J. J. Fritch, General Contractor, Inc., and C. Wallace Plumbing Company, Inc., alleging that he had done extra work over and above the terms of a written contract, which extra work was of a reasonable value of $2,-306.78.

Appellant will hereinafter be referred to as Chambless, and appellees as Fritch and Wallace, respectively.

Fritch was general contractor for the construction for the United States of America of a 200-bed hospital located at Wolters Air Force Base, Mineral Wells, Texas.

Fritch entered into a written contract with Wallace as subcontractor for Wallace to do the plumbing work on the job. This subcontract obligated Wallace to apply a prime coat of paint to all of the pipes and machinery involved, and, in addition, a finish coat of paint to some of the pipes and machinery.

Wallace in turn entered into a written subcontract with Chambless whereby for a fixed price of $6,402.50 Chambless agreed to do the paint work required of Wallace under the contract between Wallace and Fritch.

The main painting job had been sublet by Fritch to H. M. Riley, who is not a party to this suit.

Before the hospital was completed a controversy arose as to whether the painting of pipes and machinery in certain areas was the obligation of Riley or of Chambless.

Under the terms of this subcontract it was the obligation of Wallace, therefore the obligation of Chambless, to apply two coats of paint, a prime coat and a finish coat, to pipes and machinery in "unfinished spaces". In "finished spaces" it was the obligation of Chambless to apply only one coat of paint, the prime coat, to pipes and machinery, leaving it to Riley to apply the finish coat.

The controversy arose when Chambless was called on to apply both the prime coat of paint and the finish coat to the pipes and machinery in certain areas mostly in the basement, but some of them on the first floor and the penthouse. Chambless at first refused to comply, claiming that under the terms of his contract the areas in question were "finished spaces" where he was obligated to apply only the prime coat. However, he finally proceeded to apply both coats of paint in the questioned area, but informed both Wallace and Fritch that he did so under protest. At the conclusion of the job he billed Wallace and Fritch for the sum of $2,306.78, which he claimed was a reasonable charge on a quantum meruit basis for extra work performed by him over and above the work called for in the contracts between Fritch and Wallace, and between Wallace and Chambless.

Upon refusal of Fritch and Wallace to pay, this suit was instituted by Chambless. After a trial before the court without the intervention of a jury, judgment was rendered that Chambless take nothing by his suit.

As to the meaning of the term "unfinished spaces" the testimony in the record before us is conflicting. Chambless testified that the term includes "crawl spaces" under the building, in the walls, "pipe chases", and machinery on the outside perimeter of the building such as exhaust fans, housing, and the piping motors, and cooling tower section of the cooling equipment. The term, according to Chambless, does not include areas with exposed concrete walls, especially if the walls are painted.

A "crawl space" as defined by Chambless is the underneath of a building, or an open area other than an excavation, or an open room underneath a building that has not been finished. A "pipe chase" is an area where all risers go up in one big square opening.

H. M. Riley, the general paint contractor, testified in substance that the term "unfinished spaces" does include all areas of exposed construction, such as rooms in the basement and elsewhere with exposed concrete walls, even if such exposed concrete walls are painted.

Henry Beckham, Fritch's superintendent, testified in regard to the controversy about "unfinished spaces" as follows:

"Q. Who brought the problem to you? A. I believe Mr. Chambless, Mr. Shelley—Riley, I believe was there, and possibly Chester Moore,—the foreman for C. Wallace Plumbing Company. They explained to me there their differences and I suggested we go down in the basement and take a look at the room. My general opinion after walking through the rooms that were in question and that were in dispute, the areas would be considered unfinished areas, and that being right at noon and as complicated as the painting was getting * * * and specifications, I told them that I would check into it and that I would let them have my answer one way or another on my interpretation of what I thought it should be, by one o'clock, I believe. During the meantime, I checked the specifications, I checked the plans and everything I had available, and by one o'clock my interpretation was according to the letter dated October 16th."

In his letter of October 16th, delivered in person, to Chambless, but addressed to Wallace, Beckham said:

"The question that is involved is what is a finished area and what is an unfinished area. The areas that are in question are the rooms that are indicated on the room finish schedule with *exposed* walls and *exposed* ceilings. These rooms occurring mostly in the basement and on the first floor up at the sterilizer rooms and pent house.

"Our interpretation of the specifications is that all areas so indicated on the room finish schedule with exposed walls and exposed ceilings are considered unfinished areas and should be painted according to the specifications.

"Your attention is called to the fact that when the change order came up on adding the bulk storage area there was no credit offered for converting the mechanical work in the crawl space to a finished area.

"Kindly proceed with the painting of the exposed mechanical work in the unfinished areas as interpreted above."

In six points on appeal appellant Chambless asserts in substance that it was error for the trial court to render a "take nothing" judgment against him because, under the terms of his contract, the concrete walls and ceilings in question were in "finished spaces", which under the specifications were required to be and were finish painted by the general paint contractor, therefore there was no obligation on appellant to apply more than one coat of paint, the prime coat, to the pipes and machinery in said areas; and he had applied the finish coat of paint to pipes and machinery in said areas under oral and written protest to Fritch and Wallace that such finish painting would be done only on a cost plus basis.

■ We are unable to agree with appellant. Though none of the parties expressly pled that the specifications were ambiguous as to the meaning of the term "unfinished spaces", testimony from witnesses from both sides, including testimony from Chambless himself and Beckham's letter of October 16th, was received on the subject without any objection on the grounds that ambiguity had not been pled. To us it seems quite plain that the case was tried as if ambiguity had been pled. Since the case was tried on that theory, the appeal will be decided on the same theory. Eppenauer v. Davis, Tex.Civ.App., 272 S.W. 2d 934; Rules 67 and 90, Texas Rules of Civil Procedure.

■ As pointed out by appellee Fritch there were no findings of facts and conclusions of law filed by the trial court, therefore we must presume that the trial court found in favor of appellees on every material fact issue raised by the evidence. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769, 773.

■ Applying this rule we must hold that there is ample evidence to support the court's implied finding that · "unfinished spaces" includes spaces with exposed concrete walls and ceilings, even if said walls and ceilings have been painted. Having so found the trial court properly held that under the terms of his contract Chambless was obligated to apply both the prime coat and the finish coat of paint to the pipes and machinery in the areas in dispute.

Appellee Fritch also points out another reason why Chambless is not entitled to recover. The contracts between Fritch and Wallace, and between Wallace and Chambless, provide that no extra work or changes will be recognized or paid for unless agreed to in writing before the work is done or the changes made, in which writing the extra work shall be specified in detail, together with the price to be paid.

■ Chambless admits that he did not ask for, and did not obtain a written agreement in connection with the work in dispute in this case. He further admits that

though he notified Fritch and Wallace he would expect additional compensation, they did not agree to make additional payment, it being their position that the work was included in and required by the original contract between Wallace and Chambless. Under these circumstances Chambless was properly denied recovery. State v. Martin Bros., 138 Tex. 505, 160 S.W.2d 58; Schneider v. City of Ann Arbor, 195 Mich. 599, 162 N.W. 110; 9 Am.Jur. 16–18.

Appellee Wallace after adopting the brief of appellee Fritch, presents two counterpoints in which it takes the position that regardless of the liability, if any, of Fritch to Chambless, there can be no liability of Wallace to Chambless for these reasons (1) if the work was within the terms of the contract between Wallace and Chambless, Chambless was obligated to do it; and (2) if the work was not within the contract Wallace is blameless because it was Fritch, not Wallace, who ordered the work to be done.

The testimony of Chambless shows that Chester Moore, Superintendent for Wallace, also directed Chambless to do the work in dispute. We quote the testimony:

"Q. Was there any representative of the C. Wallace Plumbing Company on October 16, 1956 when you had this conversation with Mr. Beckham? A. Yes, sir.

"Q. Who was present? A. A fellow named Chester Moore.

"Q. What was he doing out there on the job? A. He was their general foreman or superintendent on the job.

"Q. Was he present when you had any of these oral conversations with Mr. Beckham? A. He was present at the second time that Mr. Beckham and I were discussing it, yes.

"Q. Was that the time Mr. Beckham told you to go ahead and do this painting out there? A. Yes, sir.

"Q. And that is the thing you say you did under protest? A. Yes.

"Q. Was there any conversation between you and Moore that you can recall at that time? A. Yes, sir, I more or less had to kind of look through Moore.

"Q. Just tell the conversation now, not any conclusions, what he said he would do and what you said. A. Chester Moore told me I would have to go ahead and do it."

In view of the above testimony we are not prepared to sustain the counterpoints of appellee Wallace on the grounds stated in the brief. However, for reasons already stated we think there was no liability on the part of either Fritch or Wallace.

Appellant's points on appeal are overruled.

The judgment of the trial court is affirmed.