449 F.2d 557
 SAMUEL J. CRESWELL IRON WORKS, INC., a corporation of the Commonwealth of Pennsylvania, Appellant,
v.
The HOUSING AUTHORITY OF the CITY OF CAMDEN, NEW JERSEY, a public corporation, and Dante J. D'Anastasio, jointly, severally and in the alternative.
 No. 18107.
 United States Court of Appeals, Third Circuit.
 Argued June 24, 1971.
 Decided September 22, 1971.
 
 Lee B. Laskin, Charles Rudd and James Madden, Camden, N. J. (Ballen, Batoff & Laskin, Camden, N. J., on the brief), for appellant.
 Stanley H. Needell, Lewis, Siegel & Wood, Trenton, N. J., for appellee D'Anastasio.
 Martin F. McKernan, Camden, N. J., for appellee Housing Authority.
 Before BIGGS and VAN DUSEN, Circuit Judges, and KRAFT, District Judge.
 OPINION OF THE COURT
 BIGGS, Circuit Judge.
 
 
 1
 This is an appeal from a judgment entered May 8, 1969 dismissing Creswell's action based on alleged breach of contract by the Housing Authority and its agent, D'Anastasio.[1]
 
 
 2
 The facts giving rise to this controversy follow: In 1964, the Authority advertised for bids for the erection of a senior citizens housing project known as John F. Kennedy Towers. On June 18, 1964, Creswell submitted a bid to the Authority for structural steel and miscellaneous metal work in consideration for the sum of $38,895. Creswell was the lowest bidder and on July 14, 1964, signed a contract to perform this work, which essentially required the erection and installation of stairwells in conformity with specifications set out in the contract. The specifications required platform decking made of 14 gauge material, wall stringers 8.4# per foot, platform headers with 5 foot channels 6.7#. On October 8, 1964 Creswell submitted a shop drawing to Ronald F. Liszewski, D'Anastasio's project captain, whose function was to approve from a design concept various shop drawings submitted by contractors.[2] Liszewski rejected Creswell's original shop drawing with the notation: "Wall bearing design not desirable under these conditions, submit different design." Creswell later submitted to Liszewski a new shop drawing, the design concept of which had been changed as requested by the notation on the previously rejected shop drawing. Creswell's modified shop drawing, which was not accompanied by a letter of transmittal to Liszewski detailing the discrepancies between the modified shop drawing and the original contract specifications, was approved and signed by Liszewski on November 3, 1964.
 
 
 3
 In early December 1964, the stairs were shop fabricated[3] and five flights were erected on the construction site. In early February 1965, Blizzard, a Public Housing Administration inspector, notified Osborn, executive director of the Authority, of a problem concerning the Creswell stairs. This prompted Osborn to notify the Authority and the architect. The Authority received a report from Liszewski to the effect that the stairs, as constructed in conformity with Creswell's new approved shop drawing, did not conform with the original specifications set forth in the contract documents. The report concluded:
 
 
 4
 "The discrepancies are (1) platform decking is 20 gauge material in lieu of 14 gauge as required; (2) wall stringers are 6.5# per foot in lieu of 8.4# per foot as required; (3) platform headers are 6" beam 4.4# in lieu of 5" channel 6.7# as required.
 
 
 5
 "These discrepancies exist on both stair Towers and extend for five flights, first through fifth floors. The remaining five flights have not been installed and I shall not permit the stairs to be installed unless they meet the requirements of the Contract.
 
 
 6
 "The Contractor * * * has been directed to correct these discrepancies. To date he has not taken any action.
 
 
 7
 "Payments for Creswell Iron Works have been stopped and shall remain so until satisfactory corrections are completed."
 
 
 8
 Thereafter, the Authority advised Creswell to remove the stairs and install new stairs in accordance with the original contract specifications.[4] Finally, the stairs were removed by Creswell on or about April 28, 1965 and new stairs, which were in compliance with the contract specifications, were installed during the period between April 28, 1965 and June 8, 1965.
 
 
 9
 Creswell seeks damages in the amount of $19,385 for shop time required to make the new stairs and railings, for necessary labor to remove the prefabricated stairs, for the erection of the new stairs and for the materials which went into the new stairs.[5]
 
 
 10
 In the trial court and in this court, Creswell strenuously argues that the approval by Liszewski of its shop drawing constituted an approval not only of the design concept but of the change in specifications from the original contract and that this approval is binding on the Authority under the principle of respondeat superior.
 
 
 11
 Liszewski testified that he never discussed with William Raiguel, Jr., executive vice-president of Creswell, or any other Creswell employee or officer, deviations in the shop drawings from the original contract specifications. Thus, he testified that he never approved the changes in the specifications which appeared in the shop drawing. Liszewski also asserted that the only item discussed concerned the legality of installing shop-fabricated, as opposed to job-fabricated, stairs. Raiguel, on the other hand, testified that he orally discussed with Liszewski the discrepancies. This conflict in testimony was not resolved by the District Court, but we think that this case can be disposed of on the present record without remand to the District Court for further findings of fact. Section 4-19(c) of the construction contract states:
 
 
 12
 "All shop drawings submitted must bear the stamp of approval of the Contractor as evidence that the drawings have been checked by the Contractor. Any drawings submitted without this stamp of approval will not be considered and will be returned to the Contractor for proper resubmission. If the shop drawings show variations from the requirements of the Contract because of standard shop practice or other reason, the Contractor shall make specific mention of such variation in his letter of transmittal in order that, if acceptable, suitable action may be taken for proper adjustment; otherwise the Contractor will not be relieved of the responsibility for executing the work in accordance with the Contract even though such shop drawings have been approved." (Emphasis added.)
 
 
 13
 The language of this section of the contract compels the conclusion that the mere approval by Liszewski of Creswell's shop drawing did not bind the Authority to the changes in specifications for the shop drawing was unaccompanied by the requisite letter of transmittal detailing the discrepancies between the shop drawing and the original specifications. Our conclusion is reaffirmed by Section 4-10 of the contract which provides:
 
 
 14
 "Except in an emergency endangering life or property, no change shall be made by the contractor unless in pursuance of a written order from the Local Authority, countersigned by the Architect, authorizing the change and no claim for an adjustment of the contract price or time shall be valid unless so ordered."
 
 
 15
 It follows that the undisputed testimony reveals that the changes made by Creswell in the stairs were not in pursuance of a written order from the Authority countersigned by the architect.
 
 
 16
 Creswell, however, argues that it was given oral approval by Liszewski to change the specifications of the contract and Liszewski, as the architect's representative, had the implied authority to waive the provisions of the contract requiring (1) a letter of transmittal and (2) a written order from the Authority countersigned by the architect. While we are aware of no New Jersey case directly on point, we think that the New Jersey Supreme Court would follow the weight of authority to the effect that, in the absence of express authority, an architect, in his role as architect, has no power to waive or modify a stipulation in a contract that requires a letter of transmittal or a written order if the contractor is to be permitted to make changes in the specifications. Massachusetts Bonding & Ins. Co. v. Lentz, 40 Ariz. 46, 9 P.2d 408 (1932); Iowa Electric Light & Power Co. v. Hopp, 221 Iowa 680, 266 N.W. 512 (1936); Kelly v. St. Michael's Roman Catholic Church, 148 App.Div. 767, 133 N.Y.S. 328 (1912); Wiley v. Hart, 74 Wash. 142, 132 P. 1015 (1913); McNulty v. Keyser Office Bldg. Co., 112 Md. 638, 76 A. 1113 (1910); Des Moines Plumbing & Heating Co. v. Magarian, 201 Iowa 647, 207 N.W. 750 (1926); Chicago Lumber & Coal Co. v. Garmer, 132 Iowa 282, 109 N.W. 780 (1906); Carter v. A. I. Root, Inc., 84 Neb. 723, 121 N.W. 952 (1909); Gray v. La Societe Francaise de Bienfaisance Mutuelle, 131 Cal. 566, 63 P. 848 (1901); Langley v. Rouss, 185 N.Y. 201, 77 N.E. 1168 (1906); P. & M. J. Bannon v. Jackson, 121 Tenn. 381, 117 S.W. 504 (1908); Baltimore Cemetery Co. v. Coburn, 7 Md. 202 (1854). See also Feeney v. Bardsley, 66 N.J.L. 239, 49 A. 443 (1901). It follows that even if the trial court had found that Liszewski had given oral permission to deviate from the specifications without submitting a letter of transmittal or receiving a written order from the Authority, this permission would not be binding on the Authority. Furthermore, it cannot successfully be contended that even though the changes made in the stairs were unauthorized they were later ratified by the owner, for the Authority, when informed of the deviations from the specifications, ordered Creswell to remove the stairs and to construct new stairs in conformity with the specifications.
 
 
 17
 Creswell also argues that it substantially complied with the contract and that it is entitled to recover the contract price less a fair allowance to the Authority for these "minor" deviations. Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J.Super. 332, 126 A.2d 372 (1956). Again the trial court did not make a finding as to whether Creswell substantially complied with the contract. Ordinarily, we would be required to remand the case for such a finding. However, on the present record, we think that Creswell is estopped from asserting this theory for its deviations from the contract were willful and intentional. Jardine Estates, supra. The rule which New Jersey follows has been stated as follows:
 
 
 18
 "Since the rule permitting a recovery in case of substantial performance of a building contract is based on equitable considerations, it is usually stated as essential to its application that the contractor must have acted in good faith, and have unintentionally failed to perform in accordance with the contract requirements." 13 Am. Jur.2d, Building and Construction Contracts § 42, at 45.
 
 
 19
 On cross-examination Raiguel admitted that at the time he placed his bid he did not intend to comply with the contract specifications.[6] We think this evidence clearly demonstrates that Creswell intentionally failed to comply with the contract specifications.[7] Creswell therefore is not entitled to invoke the doctrine of substantial performance. See again Jardine Estates.
 
 
 20
 Creswell also asserts that, even assuming a breach of contract on its part, the Authority was required to mitigate its damages. On March 31, 1965, Greenberg, the structural engineer engaged by the architect, sent a letter to the Authority in which he stated:
 
 
 21
 "My conclusions are that the stairs as installed do not comply with the Architectural drawings and specifications. It is my opinion that the stairs cannot be altered to conform to the design drawing. However, the structural analysis proves that the stairs can meet performance specifications when completed.
 
 
 22
 "It is my opinion that the Creswell stairs as installed, together with steel header beams, steel studs and steel ribbed floor decking are equal or better than the stairs as originally specified." On cross-examination, Greenberg explained that by the last paragraph of his letter he meant that the addition of 1000 steel studs would make the Creswell stairs "Better or of a greater capacity than the ones designed."[8] He also testified that the cost of these studs including labor and material would be "[a]bout one dollar each."[9] Creswell argues from the foregoing letter and testimony that the Authority was required to allow Creswell to make the changes suggested by Greenberg. We cannot agree with this conclusion. The Authority contracted with Creswell to build stairs according to the prescribed specifications. We think it may not be gainsaid that the Authority acted reasonably in requiring Creswell to remove the stairs since they were not in conformity with the specifications on which public bidding had been based. In fact, if the Authority allowed Creswell to install the steel studs at a small additional cost to Creswell, the Authority might well have been sued by some disgruntled bidder who had submitted a bid based on the specifications. In addition the fact that the original stairs as modified might have been superior to the stairs provided for in the specifications is irrelevant. The Authority bargained for a certain type of stairs and was entitled to get that type.
 
 
 23
 Creswell's final argument is that the Authority breached the contract by refusing to grant Creswell a hearing until the stairs were removed and replaced. In support of its position Creswell cites Section 4-15 of the contract. We have examined this section and we fail to see that it provides for a hearing. It states merely that all disputes shall be presented to the contracting officer for his decision. That decision, as we interpret the section, was intended to be final subject only to a court review.
 
 
 24
 The judgment of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Housing Authority filed a counterclaim against Creswell which was also dismissed by the trial Judge for failure of proof. The Authority has not appealed from this judgment
 
 
 [2]
 The uncontradicted testimony of Liszewski revealed that it was his function as the architect's representative to approve shop drawings only as to design concept and that it was the responsibility of the contractor to make sure that his shop drawings complied with the contract specifications
 
 
 [3]
 The contract specifically provided: "At contractor's option, metal stairs may be completely shop fabricated for installation at the site or may be job fabricated."
 
 
 [4]
 The Authority reached this decision after being apprised by its structural engineer that the stairs could not be altered to meet the contract specifications and, as constructed, were not equal to or better than the stairs required under the contract
 
 
 [5]
 Creswell's claim is not too clear in respect to the charges for the removal of the old stairs and the fabrication and completion of the new stairs. In view of our disposition of this case we think it unnecessary to elaborate on this point
 
 
 [6]
 Transcript at 197-99
 
 
 [7]
 In its conclusion of law "(6)," the District Court stated: "The plaintiff is estopped from recovering from the defendants on its cause of action." While we are not certain as to exactly what the trial Judge had in mind by using this language we think he probably was referring to the doctrine discussed above,viz., that a contractor cannot assert substantial performance if he intentionally breaches the contract.
 
 
 [8]
 Transcript at 317
 
 
 [9]
 Transcript at 313