**IDA GROVE ROOFING AND IMPROVEMENT, INC.,**
Plaintiff-Appellant,

v.

**CITY OF STORM LAKE, Iowa,**
Defendant-Appellee.

No. 84–1800.

Court of Appeals of Iowa.

Oct. 29, 1985.

Laurel L. Boerner, of Boerner & Jacobson, Ida Grove, and Willis J. Hamilton, of the Hamilton Law Firm, P.C., Storm Lake, for plaintiff-appellant.

Paul D. Havens, City Atty., for defendant-appellee.

Considered by OXBERGER, C.J., and SCHLEGEL, and HAYDEN, JJ.

OXBERGER, Chief Judge.

The plaintiff appeals from the trial court's rulings in two consolidated actions to recover moneys in connection with a construction contract. We affirm the trial court in part and reverse in part regarding the court's failure to award interest on a portion of the moneys paid.

Plaintiff.Ida Grove Roofing and Improvement, Inc. submitted the lowest bid for a contract to replace the roof of the city water works plant. The project included removing the existing roof, applying insulation and a built-up roof. Plaintiff's general manager prepared the bid by examining the book of specifications, examining the blueprint of roof sections of the building, examining original blueprints and visiting the plant for an on-site inspection. After examining the building documents, the manager determined the thickness of the roof to be removed would be approximately four inches. The blueprints reflect a mini-

mum depth of concrete insulation called Zonolite to be removed of two to six inches.

Within an hour after beginning work on the project, it was discovered that insulation on the lowest of three roof sections varied in thickness from four to eight inches instead of two to six inches as anticipated. The plaintiff's manager, Bill Baughman, contacted the engineer for the project, Jack Heuton, who said things would probably be different when the crew moved to the next section. After the lower roof was completed and the crew moved to the next section, it was discovered the thickness of insulation was four to eight inches. Mr. Heuton again told the manager the situation should improve on the next section. When beginning the project on the last section it was discovered the thickness of the Zonolite was from four to twelve inches. Baughman told Heuton the plaintiff would seek additional compensation under the contract. The engineer denied this conversation took place. A letter was sent to the defendant on July 30, 1980, indicating the plaintiff would seek additional compensation. A letter sent September 19 indicated the amount of the additional compensation sought, $23,096.99.

Two separate actions were brought by plaintiff. The first was to recover the final ten percent of payments on the original contract, and was filed December 5, 1980. On November 30, 1981, a motion for summary judgment was filed by plaintiff. The dispute was resolved by an agreement of the parties reflected in a calendar entry of the same date. Defendant paid the plaintiff $2000. The trial court ruled in its order of October 10, 1984, that the plaintiff was entitled to $557.50 remaining on the original contract, with ten percent interest, granted defendant judgment on its counterclaim for $619.19 with ten percent interest, determined no punitive damages were owing to plaintiff, and assessed costs of the action equally between the parties.

On appeal, the plaintiff says the court should have granted its request that interest be awarded on the $2000 paid by defendant from the time of the filing of the

motion for summary judgment on December 5, 1980, to the time of payment on November 30, 1981. The plaintiff also says the court should not have assessed fifty percent of the costs to it.

The second action brought by plaintiff, which was consolidated for trial with the other petition, demanded additional compensation because the plans and specifications provided did not correctly inform the plaintiff of the work to be done. The trial court in its ruling expressed sympathy for the plaintiff, but found that the plaintiff had never filed a change order, as the contract required, the plaintiff could have discovered the thickness of the roof through borings into the insulation, and even if the thickness of the roof could be considered a "concealed condition" as described in the contract allowing for additional compensation, a change order should have been filed before the work was completed. Plaintiff appeals from this decision of the court and assessment to plaintiff of fifty percent of the costs.

Our review of this action is limited to correcting errors of law. Iowa R.App.P. 4.

As the plaintiff points out, the trial court appeared to agree that the bidding documents did not reflect the depth of the insulation accurately. Ida Grove Roofing argues it justifiably relied on these documents, and that the increased thickness of the insulation was a concealed condition. Further, no change order was obtained because the architect and water plant supervisor told the plaintiff the conditions would improve by the time they reached the third section of the roof.

Whether or not the condition was concealed and did not become apparent until work began on the third section, a change order was required by the contract before additional compensation would be allowed. The contract specified:

12.3.1 If the Contractor wishes to make a claim for an increase in the Contract Sum, he shall give the Architect written notice thereof within twenty days after the occurrence of the event giving rise to

such claim. This notice shall be given by the Contractor before proceeding to execute the Work, except in an emergency endangering life or property in which case the Contractor shall proceed in accordance with Paragraph 10.3. No such claim shall be valid unless so made. If the Owner and the Contractor cannot agree on the amount of the adjustment in the Contract Sum, it shall be determined by the Architect. Any change in the Contract Sum resulting from such claim shall be authorized by Change Order.

After discovering the additional thickness of the insulation on the third section, the plaintiff did not stop work and obtain a change order, but instead allegedly told the engineer additional compensation would be sought and later sent a letter.

A somewhat similar situation occurred in *Des Moines P & H Co. v. Magarian*, 201 Iowa 647, 207 N.W. 750 (1926). A dotted line on a blueprint indicated there was a sewer line present in front of the building the contractor was working on. *Id.* at 649, 207 N.W. at 750. Based on this, the contractor made his bid. *Id.* It was discovered the sewer line would have to be joined further away at higher costs. *Id.* at 650, 207 N.W. at 751. The court held the plaintiff should have sought a change order when the condition was discovered. *Id.*

■ We agree with plaintiff that the general rule has been cited that a contractor may recover where defective specifications cause a lower bid than would have otherwise been made. 13 Am.Jur.2d *Building and Construction Contracts* § 19 (1964). The general rule continues, however, that if required, the request for additional compensation must be in writing and cannot be made after the work is completed. *Id.* at § 22. The authorities further indicate that key to sufficiency of a writing as a change order is whether there was *approval* of additional compensation by the owner. *Id.* at 23 (cited with approval at *Berg v. Kucharo Construction Co.*, 237 Iowa 478, 488, 21 N.W.2d 561, 566–67 (1946)).

In another jurisdiction the court dealt with the same fact situation presented here and held the contractor was not entitled to pay for extra work. *Chambless v. J.J. Fritch, General Contractor, Inc.*, 336 S.W.2d 200, 204 (Texas Civ.App.1960). A provision in the contract indicated there would be no pay for extra work unless agreed to in writing before the work was done. *Id.* at 203. The contractor told the general contractor he would expect additional compensation, but no agreement was made to pay the extra money by the general contractor. *Id.* at 202–03. The court disallowed the claim. *Id.* at 204.

In this case the contractor did not stop work and obtain a change order after he reached the third section of the roof and found it was not in better condition than the lower sections. We find that without plaintiff's compliance with the change order, the court was correct in denying the claim for additional compensation.

■ The appellant also presented to the trial court the question of whether interest should be allowed on the $2000 due on the original contract which was not paid until November 1981. The trial court did not address the issue in its ruling, and the appellee does not discuss the issue in its brief. Article 5 of the parties' contract states:

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate entered below, or in absence thereof, at the legal rate prevailing at the place of the project ...

We find no reason why this provision should not be enforced and change the trial court's ruling so that interest will be allowed on the payment of $2000 from December 5, 1980, to November 30, 1981.

■ The trial court is allowed considerable discretion in allocating payment of costs of an action. *Gordon v. Pfab*, 246 N.W.2d 283, 285 (Iowa 1976). Since defendant prevailed in the second lawsuit, and the parties' claims were nearly a set-off in the first lawsuit, we find the court

did not abuse its discretion in allocating the costs equally between the parties. The costs of this action shall be taxed two-thirds to appellant, and one-third to appellee.

**AFFIRMED IN PART; REVERSED IN PART.**