# IN THE COURT OF APPEALS OF IOWA

No. 20-1366
Filed October 6, 2021

**RYAN COMPANIES US, INC.,**
    Plaintiff-Appellee,

**vs.**

**FDP WTC, LLC,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

FDP WTC, LLC appeals a ruling in favor of Ryan Companies US, Inc. awarding damages on breach-of-contract claims, foreclosing mechanic's liens, and awarding attorney fees, costs, and interest. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Philip S. Bubb and Brandon R. Underwood of Fredrikson & Byron, P.A., Des Moines, for appellant.

Bradley D. Fisher and Brian D. Steffes of Fisher Bren & Sheridan, LLP, Minneapolis, MN and Stephen D. Marso of Whitfield and Eddy, P.L.C., Des Moines, for appellee.

Heard by Mullins, P.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

Contracts mean what they say. Here, a party that failed to follow what a contract said in terms of the procedure to change the scope of the contract seeks to avoid the consequences of that failure. We decline to allow such avoidance.

## I.    Background Facts and Proceedings

In 2016, FDP WTC, LLC (FDP) and Ryan Companies US, Inc. (Ryan) entered into a pair of owner-contractor contracts in which Ryan—the contractor— and FDP—the owner—agreed to terms for the construction of a hotel in Waterloo. The parties entered into the first contract (Courtyard Contract) with a guaranteed maximum price (GMP) of $22,626,869. The parties entered into the second contract (Sitework Contract) with a GMP of $2,501,864.[1] For purposes of this appeal, the terms of the Courtyard Contract and Sitework Contract are identical.

Ryan's senior project executive testified that, before executing the contracts, FDP sought to reduce the contractual scope of the project to reduce the GMP for financing purposes. Nevertheless, Ryan's project manager testified that designs issued by FDP's architect did not match assumptions in the contracts, which required modifications in the GMP. To that end, the parties executed a series of change orders to modify the scope and GMP of the project. Ryan also submitted to FDP many more requests for change orders—known as Cost Events (CEs)—for additional work consistent with the architect's designs that would increase the GMP. FDP did not sign these CEs to increase the GMP. However,

---

[1] The parties later entered into a third related contract. The third contract is not at issue on appeal.

the project manager testified Ryan performed the work under the CEs after FDP requested or otherwise orally approved such work.

In 2018, Ryan petitioned to foreclose its mechanic's liens against FDP for the project. Ryan later amended its petition to add breach-of-contract claims. FDP answered and counterclaimed with its own breach-of-contract claims.[2] The claims proceeded to a bench trial. The district court found for Ryan on its breach-of-contract and mechanic's lien foreclosure claims and denied FDP's breach-of-contract claims. The court entered judgment in Ryan's favor for $452,817 on the Courtyard Contract, $224,086 on the Sitework Contract, interest, attorney fees, and costs.

FDP appeals the district court's ruling for Ryan on the parties' contract claims. FDP argues the court erred in awarding Ryan damages, foreclosing on Ryan's mechanic's liens, denying FDP credits for reductions in the scope of the parties' contracts, and awarding Ryan attorney fees, costs, and interest. We reverse the district court's finding FDP breached the parties' contracts, foreclosure of Ryan's mechanic's liens, and award to Ryan of attorney fees, costs, and interest. We affirm the finding that FDP did not prove Ryan breached the contracts.

## II. Standard of Review

The parties agree the contract claims were tried at law below and our review is for correction of errors at law. *See NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). "If substantial evidence in the record supports

---

[2] The district court granted partial summary judgment to Ryan on its mechanic's liens related to the parties' third contract. FDP appealed, and we affirmed those liens related to the third contract. *See Ryan Cos. US, Inc. v. FDP WTC, LLC*, No. 19-1698, 2021 WL 211156, at *1 (Iowa Ct. App. Jan. 21, 2021).

a district court's finding of fact, we are bound by its finding. *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013). "However, a district court's conclusions of law or its application of legal principles do not bind us."[3] *Id.* We review actions to enforce mechanic's liens de novo. *See Flynn Builders, L.C. v. Lande*, 814 N.W.2d 542, 545 (Iowa 2012). "Review of a district court's grant of attorney fees is for an abuse of discretion." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020).

## III. Analysis

### A. Ryan's Breach-of-Contract Claims

#### 1. Express contract

##### a. Error preservation

Even though breach of an express contract was one of the primary issues in dispute before the district court, Ryan asserts FDP failed to preserve error on its arguments. As shown below, interpretation of section 6.4 of the contracts is key to the parties' dispute. Ryan asserts that because FDP did not specifically address section 6.4 before the district court, it preserved no argument on section 6.4 for

---

[3] FDP notes the district court largely adopted Ryan's proposed findings of fact and conclusions of law on the breach-of-contract and mechanic's lien foreclosure claims, and thus FDP asks us to scrutinize the court's ruling. *See NevadaCare*, 783 N.W.2d at 465 ("[W]here a district court adopts a prevailing counsel's proposed findings of fact and conclusions of law verbatim, we must scrutinize the record more carefully when conducting our appellate review."). At the court's invitation after trial, both parties submitted proposed findings of fact and conclusions of law. On our review of the record, the court clearly based its ruling on Ryan's proposal, though the court also edited Ryan's language and added findings including explicit credibility findings. While the facts on appeal are mostly undisputed and the court's conclusions of law are not binding, we are mindful the court adopted much of Ryan's proposal, and we will scrutinize the court's ruling accordingly.

appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). However, FDP extensively argued before the district court that Ryan performed work outside the scope of the contracts and failed to obtain proper change orders to modify the scope to include this work. While FDP's trial filings do not address section 6.4, section 6.4 was an issue at trial and the court's ruling squarely addressed its language. Because FDP argued the scope of work and change orders at trial, and the court specifically considered and decided section 6.4 in its ruling, FDP's breach-of-contract arguments are preserved for our review.

### b. Elements of breach of contract

To prevail on its breach-of-contract claim, Ryan must show:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [Ryan] has performed all the terms and conditions required under the contract; (4) [FDP's] breach of the contract in some particular way; and (5) that [Ryan] has suffered damages as a result of the breach.

*Baccam*, 841 N.W.2d at 111 (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)). FDP challenges the district court's interpretation of the terms of the contracts and whether Ryan performed pursuant to those terms.

> The determination of the intent of the parties at the time they entered into the contract is the cardinal rule of contract interpretation. If the principal purpose of the parties is ascertainable from the words and other conduct of the parties in light of all the circumstances, we give those words and conduct great weight when interpreting the contract. When interpreting the meaning of a contract we may also look to extrinsic evidence such as, the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing

between the parties. However, the most important evidence of the parties' intentions at the time they entered into the contract is the words of the contract.

*NevadaCare*, 783 N.W.2d at 466 (quotations and citations omitted).

The parties executed form contracts, modified to their needs, with a GMP. In a GMP contract, generally "the contractor assumes the risk of the costs exceeding a maximum price." Philip L. Bruner & Patrick J. O'Connor, Jr., 2A Bruner & O'Connor on Construction Law § 6:109 (Aug. 2021 Update). To that end, section 5.2.1 of both contracts states:

> The Contract Sum[4] is guaranteed by the Contractor not to exceed [$22,626,869.00 for the Courtyard Contract and $2,501,864.00 for the Sitework Contract], subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. *Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.*

(Emphasis added.) Similarly, section 8.1 states the contractor's reimbursable costs do not include costs "that would cause the Guaranteed Maximum Price to be exceeded," unless those costs are "included in Change Orders approved by the Owner." An attachment to the contracts defines "Change Order" as "a written instrument prepared by the Architect and signed by the Owner, Contractor, and Architect." The contracts also state they "represent[ ] the entire and integrated agreement between the parties" and "may be amended or modified only by a Modification.[5]"

---

[4] Section 5.1 states: "The Contract Sum is the Cost of the Work . . . plus the Contractor's Fee."
[5] The contracts define a "Modification" as a change order or certain other written orders.

The district court awarded damages above the GMP for work described in CEs. There is no dispute the parties did not sign a written change order to increase the GMP to include this additional work. Even so, Ryan asserts—and the court agreed—the contracts provide for another way to increase the GMP in section 6.4:

> If no specific provision is made in Article 5 for adjustment of the Contractor's Fee in the case of changes in the Work,[6] or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Article 5 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

The plain language of section 6.4 shows its purpose is to permit adjustment to the Contractor's Fee, which the contracts set at 5% "of the Cost of the Work." It does not allow for a "catch all" adjustment of the GMP when Ryan fails to obtain a required change order—the claim urged by Ryan and accepted by the district court. Under section 6.4, when the work changes and the contract either does not address changes to the contractor's fee[7] or such changes would "cause substantial inequity," then the contractor's fee will "be equitably adjusted." Section 6.4 allows adjustment of the GMP "accordingly," i.e., according to the adjustment in the contractor's fee. Nothing in section 6.4 allows adjustment of the GMP whenever it would be equitable to do so. Ryan's and the district court's interpretation would defeat guarantees elsewhere in the contracts that the owner need not reimburse the contractor for costs above the GMP and would defeat the written-change-order

---

[6] The attachment states: "The term 'Work' means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations."

[7] Section 5.1.2 states: "Changes in the work are subject to Five Percent (5%) fee."

requirements of the contracts. We reject Ryan's and the district court's interpretation of section 6.4.

In its brief to us, Ryan emphasizes "the designs and construction documents were not complete when the contracts were executed, and the parties understood and anticipated that the scope of work and GMP were subject to change." However, section 5.2.5 explicitly requires anticipated changes to be provided in the GMP and any changes in scope "shall be incorporated by Change Order." Regardless of the extent of changes the parties expected after executing the contracts, the contracts clearly guaranteed FDP would not have to pay more than the GMP without written and signed change orders to increase the GMP. The contracts do not show uncertainty or conditions on these requirements. *See, e.g.*, *Bouten Const. Co. v. M & L Land Co.*, 877 P.2d 928, 934–35 (Idaho Ct. App. 1994) (finding language in the contract showed the initial GMP was preliminary and subject to adjustment as described in the contract); *Prof'l Serv. Indus., Inc. v. J.P. Const., Inc.*, 491 N.W.2d 351, 353 (Neb. 1992) (finding a contract did not include a GMP because, in part, the contract's total amount explicitly stated "estimated"). Likewise, there is no ambiguity in this provision that would allow us to look at evidence beyond the plain language of the contracts. *See Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999) (allowing extrinsic evidence to help determine intent only if a contract is ambiguous or uncertain). When a contract unambiguously requires a written change order or other procedure to modify the contract, the contractor is generally not allowed to recover for additional work unless the contractor followed this procedure or the owner waived the required

procedure.[8]  *See Ida Grove Roofing & Improvement, Inc. v. City of Storm Lake*, 378 N.W.2d 313, 314–15 (Iowa Ct. App. 1985); *see also Katsura v. City of San Buenaventura*, 65 Cal. Rptr. 3d 762, 763–64 (Cal. App. 2007); *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 506–07 (Miss. 2007); *Ridley Elec. Co. v. Dormitory Auth. of State*, 60 N.Y.S.3d 551, 553–54 (N.Y. App. Div. 2017); *Seneca Valley, Inc. v. Caldwell*, 808 N.E.2d 422, 426–33 (Ohio Ct. App. 2004).  Finding Ryan failed to obtain the contractually required change orders to increase the GMP, we thus reverse the district court's finding that FDP breached the parties' contracts.

### 2.    Implied Contracts

Alternatively, Ryan argues the parties had implied-in-fact and implied-in-law contracts that allow it to recover for the work performed under CEs but not included in change orders.  *See Iowa Waste Sys. Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 29–31 (Iowa Ct. App. 2000) (discussing implied-in-fact and implied-in-law contracts).  The district court rejected the implied-contract theories because "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter."  *Legg v. W. Bank*, 873 N.W.2d 763, 771 (Iowa 2016) (quoting *Chariton Feed & Grain v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985)).  Ryan asserts its claims are proper for implied contracts because the work at issue was outside

---

[8] Ryan asserts it presented an argument to the district court that FDP waived the change-order requirement because FDP authorized all extra work.  While the district court agreed "FDP provided Ryan with approval to perform the work that was reflected in the" CEs, the court did not make specific findings on the issue of waiver of the change-order requirement.  *See Cent. Iowa Grading, Inc. v. UDE Corp.*, 392 N.W.2d 857, 860 (Iowa 1986) (discussing the elements for waiver of a change-order requirement).  Thus, any argument FDP waived the change-order requirement is not preserved for our review.  *See Meier*, 641 N.W.2d at 537.

the scope of work and thus not covered by the parties' express contracts. *See id.* at 771–72 ("[T]here may be a contract implied in law on a point not covered by an express contract . . . ." (quoting *Smith v. Stowell*, 125 N.W.2d 795, 800 (Iowa 1964))). However, the work at issue was covered by the parties' express contracts due to specific language in the contracts requiring valid change orders to add such work to the scope of the project. As a result, we agree with the district court that the recovery Ryan seeks is covered by the parties' express contracts and no recoveries on implied contract theories are available.

## B. Mechanic's Liens

FDP argues the foreclosure of Ryan's mechanic's liens must also be reversed. The mechanic's liens are based on the damages Ryan incurred from FDP's alleged breach of contract. Because we find FDP did not breach the parties' contracts, we also reverse foreclosure of the mechanic's liens. *See Flynn Builders, L.C.*, 814 N.W.2d at 545 (stating successful foreclosure of a mechanic's lien entitles the builder to no more than damages under the contract).

## C. FDP's Breach-of-Contract Claim

FDP argues Ryan breached the parties' express contracts by reducing the value of its work without a corresponding reduction in the GMP. FDP asserts Ryan owes credits for these reductions. The district court found the parties agreed to many reductions and additions to the scope of work and, relying on valuations in the record, FDP failed to prove the reductions exceeded the additions so that it was owed credits. The court also noted FDP did not seek credits for amounts it paid to Ryan until Ryan filed its claims here, suggesting FDP itself did not believe it was entitled to credits until Ryan filed its claims. We find substantial evidence to

support the district court's finding that FDP failed to prove it was entitled to credits for reductions in work.

### D. Attorney Fees, Costs, and Interest

The district court awarded attorney fees, costs, and interest to Ryan as the prevailing party. Regarding the mechanic's lien foreclosure claims, Iowa Code section 572.32(1) allows "a prevailing plaintiff" to recover "reasonable attorney fees." Regarding the breach-of-contract claims, section 15.2 of the contracts states:

> In the event that any payment by [FDP] to [Ryan] is not paid when due, [FDP] shall pay interest on said unpaid amount . . . . [FDP] shall pay to [Ryan] all costs reasonably incurred by [Ryan] in the collection of amounts payable to Contractor hereunder, including reasonable attorney's fees.

Because Ryan did not prevail on its mechanic's lien foreclosure claims, Ryan is not entitled to recover attorney fees on those claims under Iowa Code section 573.32(1). Similarly, because Ryan did not prevail on its breach-of-contract claims, FDP did not fail to make a payment when due and Ryan is not entitled to recover its collection costs under the terms of section 15.2 of the contract. As a result, we also reverse the awards of attorney fees, costs, and interest.

## IV. Conclusion

Because Ryan sought to increase costs of the work beyond the GMP without obtaining valid change orders, we reverse the district court's finding FDP breached the parties' contracts, foreclosure of Ryan's mechanic's liens, and award to Ryan of attorney fees, costs, and interest. We remand for dismissal of all such

claims.  We affirm the district court's finding that FDP did not prove Ryan breached the contracts.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**