John G. ASIMOS et al *v.* T. L. REYNOLDS & SONS, Inc.

5-4505                                    429 S. W. 2d 102

Opinion delivered May 27, 1968
[Rehearing denied July 15, 1968.]

*Curtis L. Ridgway Jr.,* for appellants.

*Wood, Chesnutt & Smith,* for appellee.

J. Fred Jones, Justice. T. L. Reynolds & Sons, Inc., an excavation contractor, obtained judgment in the Garland County Circuit Court against Mr. and Mrs. John

G. Asimos for $19,817.40 as balance due on an excavation contract, and Mr. and Mrs. Asimos have appealed.

The appellants were the owners of the De Soto Hotel in Hot Springs, as well as Lots 13 and 14 in Block 127 on a steep mountainside across Canyon Street from the hotel. In order to construct a parking lot for the hotel, appellants entered into an agreement with the appellee under which the appellee agreed to excavate and remove the dirt from Lots 13 and 14 for a contract price of $56,000. The pertinent part of the agreement giving rise to the litigation is as follows:

"Contractor agrees to excavate and remove dirt, etc., from the premises known as Lots 13 and 14 of Block 127 of the United States Hot Springs Reservation, as follows:

(A) All of Lots 13 and 14 with exception of the Northwesterly two feet of said Lots to a grade on the Southeasterly line of said Lots equal to that of Canyon Street which border said lots at said point and from said grade rising in a Northwesterly direction, so as to have the grade along the Northwesterly line of said Lots 5 feet above the Canyon Street grade."

The agreement provided for payments to be made as the work progressed and the last paragraph provided as follows:

"The Parties hereto agree that the cost of removing any sluff or cave-in materials shall be borne by the Contractor during the period of excavation, but that the cost of removing any sluff or cave-in materials shall be borne by the Owner at all times other than during the period of excavation."

Appellants subsequently requested that additional work be done in lowering the grade level of the floor

of the excavation and this work was performed. Appellants paid a total of $33,000 on the contract and upon failure to pay anything further, appellee sued for $26,659 as the balance due on the contract. This amount included $1,159 for additional work on the side agreement for change in the grade of the floor of the excavation. The appellants answered by general denial, except as to the execution of the contract, and appellants counterclaimed for damages in the amount of $45,000 for breach of the contract.

The case was tried in the circuit court before the judge sitting as a jury, and the judgment in favor of appellee for $19,817.40 was rendered on the findings of the trial court, as follows:

"1. The plaintiff, T. L. Reynolds & Sons, Inc. entered into a contract with the defendants, John G. Asimos and Jane A. Asimos to excavate certain portions of Lots 13 and 14 of Block 127 of the United States Hot Springs Reservation for a total consideration of the sum of $56,000.00; that of that sum $33,000.00 was paid by the defendants to the plaintiff.

2. That the plaintiff performed the contract to the extent possible; that the plaintiff was unable to excavate a ninety degree vertical line due to the nature of the rock formation, which necessitated slopeage to protect against sloughage and cave-in of the adjoining property; that plaintiff and defendants acquiesced in the demand of the National Park Service to refrain from excavation that would undercut National Park property or permit slides that would affect the surface of National Park property.

3. That the amount of slopage remaining on said lots contemplated to be excavated amounted to 2,412 cubic yards; that the cost of excavating said cubic yards, based upon contract price, would have been $1.80 per cubic yard; that the defendants are

entitled to a set-off in the sum of $4,341.60 for the materials not removed as contemplated in the contract.

4. That the defendants, by causing the lot to be immediately paved and using same for parking purposes and by making additional payments to the plaintiff after the plaintiff had ceased work and left the job, waived and abandoned any claim against the plaintiff for completion of the work.

5. That the undisputed evidence proves that the plaintiff excavated into certain areas of the lots deeper than was required under the contract in order to provide a proper surface for paving purposes; that the work was done at the request of the defendant, John G. Asimos; and that the plaintiff is entitled to the sum of $1,159.00 for the extra work done.

6. That the defendants waived any claims for damages against the plaintiff and are estopped by their actions in causing a concrete slab to be poured and using the lot as a parking lot without first demanding that the plaintiff complete the contract; and further, the defendant, John G. Asimos admitted from the witness stand that he owed the plaintiff additional sums of money for the work."

On appeal to this court, the appellants designate the points upon which they rely for reversal, as follows:

"1. The court improperly considered certain hearsay evidence during the course of the proceeding to arrive at one of its findings of fact.

2. The court permitted recovery based on the contract when the appellee was in obvious breach thereof.

3. The court applied an erroneous formula in arriving at its judgment."

The evidence reveals that the back side or end of the excavation was sixty or seventy feet deep where it was cut into the mountain. The written agreement between the parties is silent as to whether the walls of the excavation were to be perpendicular from within two feet of the property boundary line on the side of the mountain to the floor of the excavation. Appellee based his contract price of $56,000 on the number of cubic yards to be excavated at $1.80 per yard and he estimated the number of yards to perpendicular walls, so this litigation stems from, and involves, the question of whether the walls of the excavation were to be straight up and down when the excavation was completed, or whether some deviation from perpendicular was permissible under the terms of the contract.

When appellee commenced the excavation, it soon learned, from the nature of the ground, that a perpendicular wall of an excavation sixty to seventy feet deep, would not support itself, so it sloped the wall from within two feet of the property line at the top of the excavation out to twelve to sixteen feet from perpendicular at the bottom of the excavation.

As to appellants' first point, they argue that the trial court erroneously considered certain demands made by the Park Service in a letter to appellants, with copy to appellee, the letter having been received in evidence for the limited purpose of showing it had been received. Appellants argue that outside of the contents of this letter, there-is no evidence in the record that the National Park Service had made demands on the parties to refrain from making an excavation that would undercut the National Park property.

We do not agree with the appellants on this point. The demands of the National Park Service were not material to the issue in this litigation, and if the trial court erred in considering the letter beyond the limited purpose for which it was offered and received in evidence,

we consider the error harmless under the circumstances of this case. There is ample evidence that the sixty to seventy foot wall of the excavation would have sloughed or caved off if cut perpendicular in the type of soil involved in this operation, and that such sloughing or caving would have invaded the Park Service property which was only two feet away from the top edge of the wall of the excavation. All parties recognized their duty as to protecting neighboring property and the letter from the Park Service warning the appellants and the appellee against invasion, could have added no duty not already imposed by law. As a matter of fact, T. L. Reynolds testified that he discussed the contents of the letter with appellants, that appellants agreed that the property line had to be protected against sloughing off, and that they discussed, without disagreement, that the only way to protect the property line against sloughing, was to slope the wall from the top outward toward the base, as was done. Furthermore, Mr. Reynolds testified that appellants observed the work in progress every day and made no complaint about the way it was being done. Appellants denied that they discussed with appellee the necessity for sloping the walls, but Mr. Asimos did testify: "I told him we were going to have to look after the government property but I didn't tell Mr. Reynolds to go into the government or not to go in, it was up to him to take care of it."

Appellants' second point goes to the heart of the lawsuit, but we are of the opinion that there is substantial evidence in the record to sustain the trial court.

The contract simply calls for appellee to excavate and remove dirt, etc. from "all of lots 13 and 14 with exception of the northwesterly two feet of said lots. . . ." The contract then provides for the depth of the excavation by fixing the grade of the floor in relation to Canyon Street. The grade of the walls, in relation to perpendicular, could have been fixed as easily as the grade of the floor, had the parties not intended to

leave some room for variation consistent with safety, good judgment, and common sense, as the work progressed and the nature and composition of the subsoil structure demanded. Such intent is amply supported by the circumstantial evidence in this case. Even before appellants entered into the contract with appellee, and before any topsoil was removed and the structure and composition of the subsoil or strata was revealed, Mr. Faye, a former city engineer, at appellants' request, figured and estimated the number of yards of dirt to be excavated and removed from the lots. Mr. Faye discussed the situation with the appellants, and testified as follows:

"Q. Did you ever have occasion to talk with Mr. Asimos about the slopeage, the type of rock, texture that was protecting the property lines along that line?

A. Yes.

Q. What was that discussion, what did that consist of?

A. John had—this lot has a certain what you call a horizontal area and he wanted to get as large a parking space as he could to utilize as much of his property as he could and he wanted it coming straight down and I advised him at the time through experience on other jobs around here, similar jobs, there was danger of sloughing. In other words, cut straight up and down it's just not going to stay there, it's got to come off; so, I advised him to put a slope on it but John took it from there."

Mr. Faye furnished appellants with a written estimate, as follows:

"I have made a survey of Lots 13 and 14 in Block 127 of the Hot Springs Reservation, and have made calculations of the yardage to be excavated.

The calculations are based on cutting the lots to street grade at the front of the lots for the entire frontage on Canyon Street, and the bottom of the cut to rise five feet toward the rear of the lots. The calculations are also based on the vertical cuts having a slope of one horizontal to five vertical.

On this basis, I have calculated the excavation yardage to be 26,500 cubic yards.

(29,000) straight down.''

With this knowledge, advice, and recommendation, furnished by an expert civil engineer with broad experience in mountainside excavations in Hot Springs, appellants entered into the contract with appellee and although the horizontal elevation of the floor was specifically spelled out in the contract to accomplish drainage, the vertical position of the walls was not specifically designated and spelled out in the contract. There is no evidence in the record that the parties to the contract ever discussed with each other the interpretation or meaning of any of the terms of the contract either before or during the period of performance. The intention of the parties to a contract controls its interpretation, and in construing a contract, the court should place itself in the situation of the parties in order to arrive at their intention in making it. *Arlington Hotel Co.* v. *Rector*, 124 Ark. 90, 186 S. W. 622.

Even though the contract price of $56,000 appears to have been arrived at by multiplying the estimated number of yards of the dirt to be excavated, straight down from within two feet of the property line, by $1.80, the estimated charge for excavating one cubic yard, the overall evidence is convincing that the contract was written, and so considered, accepted and intended by the parties, that appellants were to have as much parking space in the excavation as reasonably possible, and that appellee was to excavate as much space as reasonably

possible within the designated area inside appellants' property boundary lines.

The overall evidence is indicative that the appellants and the appellee made a common sense and practical approach to the interpretation and performance of the contract, the appellant desiring the walls to. be as near perpendicular as reasonably possible, and the appellee desiring to do the excavation in such manner as to leave the walls as perpendicular as reasonably possible. The evidence is clear and convincing, that it was not reasonably possible to excavate to the depth required with the walls of the excavation being perpendicular, so we conclude that there is substantial evidence in the record that appellee was not required under the terms of the contract to excavate to perpendicular walls within two feet of appellants' property lines.

The full performance of the contract by appellee, as intended and understood by the parties, is borne out by the evidence. Appellants agreed that property lines had to be protected. They observed the excavation in progress and made no objection to the manner in which appellee was performing the work (which was being done in keeping with the recommendations made to Mr. Asimos by his own engineer). Appellants started paving the floor of the excavation as soon as appellee removed its machinery. The appellants made payments on the contract after the machinery was removed and the paving completed, and Mr. Asimos admitted at the time of the trial that he still owed some amount to appellee. Considerable material sloughed off of the walls after appellee ceased work and no request was made for its removal under the last paragraph of the contract. In fact the record reveals that no dissatisfaction was registered by appellants to the entire performance, until appellee demanded pay of the balance he contended was due on the contract price. We conclude that there is substantial evidence that the contract was fully performed by the appellee according to the terms of the contract, as under-

stood and intended by the parties to the contract when the agreement was entered into by them.

In support of appellants' third point, they advance a logical argument and we agree that the trial court may have applied an erroneous formula in arriving at its judgment. But if error was committed in this connection, appellants are the beneficiaries of the error and they are not the ones to complain.

The trial court found that appellee "performed the contract to the extent possible." This being a suit on a contract in a court of law, we interpret the court's finding to be that the appellee performed the contract to the extent possible, as contemplated and intended by the parties to it. Appellant is correct in that there is an inconsistency in allowing appellee's recovery on a contract performed with a set off in damages to appellants for that portion of the contract that was not performed. There was no evidence submitted as to the number of yards actually excavated by the appellee. There was evidence as to the number of yards still remaining in the slope of walls making up the difference between the contract as performed by the appellee and a perpendicular wall as appellant contends the contract called for. There was also evidence that the appellee arrived at his contract price on the estimated cost of removing the dirt at $1.80 per yard and that he arrived at the $56,000 figure, on the theory that he would be able to excavate the area to perpendicular walls, even though the contract did not call for perpendicular walls and the parties intended that the walls be as near perpendicular as reasonably possible. Apparently, the trial court reasoned that since appellee's contract price was based partially on dirt he was unable to excavate, that equity and good conscience would not permit him to recover for work he intended but was unable to perform, and proceeded to credit appellants' account with that portion of the contract price which was based on services appellee intended but was unable to perform. In other words, the trial court apparently considered that appellee had

overcharged the appellants by overestimating the number of yards of dirt he could move at $1.80. The fallacy of this reasoning lies in the fact that appellee did not contract to do the excavating at $1.80 per yard, he contracted to do it for $56,000.

There is substantial evidence that the contract was performed as the parties intended. There is substantial evidence that appellee performed additional work at appellants' request in lowering the original grade in the excavation floor. We agree with appellant, however, that the trial court applied an erroneous formula in arriving at its judgment, but the error was favorable to the appellants, and the appellee has not appealed.

The judgment of the trial court is affirmed.

BYRD, J., concurs.