RAD-RAZORBACK LIMITED PARTNERSHIP,
REALTY ASSOCIATES DEVELOPMENT, INC., John
MARCON, Bruce BURROW, Samuel LASUSA,
RAZORBACK SQUARE SHOPPING CENTER, a Joint
Venture, FIRST REAL ESTATE DEVELOPMENT
CORPORATION *v.* B.G. CONEY CO.

85-281                              713 S.W.2d 462

Supreme Court of Arkansas
Opinion delivered July 21, 1986
[Supplemental Opinion on Partial Rehearing September 22, 1986.[1]]
[Rehearing denied October 20, 1986.[2]]

---

[1] Holt, C.J., and Purtle and Hays, JJ., not participating.

[2] Hickman, J., would grant. Holt, C.J., and Hays, J., not participating.

*Friday, Eldredge & Clark*, by: *Bill S. Clark*, for appellants.

*Wood Law Firm*, for appellee and cross-appellant B.G. Coney Company.

*Walter A. Murray*, for cross-appellees Shrader Construction Company and Shirley's Excavating & Clearing, Inc.

*Southern, Allen, East, James & Jones*, by: *Jack East, III*, for cross-appellee River Valley, Inc.

STEELE HAYS, Justice. This case involves disputes that arose during the construction of The Razorback Square Shopping Center in Little Rock. Appellants are the developers, RAD-Razorback Limited Partnership and others, and appellee is the contractor, B.G. Coney Company. The disputes center primarily around site preparation and earthwork.

Coney brought suit against RAD-Razorback for items of work he claimed were not part of the contract, but were "extra work" that warranted compensation above the contract price. RAD-Razorback took the position that the items were called for by the contract and it counterclaimed for approximately $200,000 in credits to be back charged against Coney for failure to meet the completion date, and for the cost of correcting some parts of Coney's work which RAD-Razorback claims were improperly performed. The chancellor found for Coney on his claims for extra work and against RAD-Razorback on its counterclaim. RAD-Razorback moved for the appointment of a master and that a new trial be ordered. Those motions having been denied, RAD-Razorback now brings this appeal.

### Review of Chancery Cases

Chancery cases are tried de novo on the record on appeal. *Dopp v. Sugarloaf Mining Co.*, 288 Ark. 18, 702 S.W.2d 393 (1986); *Rose v. Dunn*, 284 Ark. 44, 679 S.W.2d 180 (1984); *Walt Bennett Ford v. Pulaski County Special School District*, 274 Ark. 208, 624 S.W.2d 426 (1981). However, we will not reverse the findings of the chancellor unless clearly against the preponderance of evidence. ARCP 52. After giving due deference to the superior position of the chancellor to determine the credibility of the witnesses and the weight to be given their

testimony, we come to the conclusion that some of the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1947).

■ When arguing on appeal, the burden is on the appellant to demonstrate error and to bring up a record which so demonstrates. *S.D. Leasing v. RNF Corp.*, 278 Ark. 530, 647 S.W.2d 447 (1983). It is appellant's burden to present an abstract that will sufficiently show the error. *Burgess v. Burgess*, 286 Ark. 497, 696 S.W.2d 312 (1985). However, if the appellant's abstract demonstrates error and a portion of the record has been omitted that would support the court's finding, the appellee must respond through Rule 9(e)(1) and supply the deficiency in the abstract. *Murphy v. Wilson*, 228 Ark. 727, 310 S.W.2d 1 (1958).

### Undercutting Dispute

The first item for which Coney sought compensation as "extra" work outside the contract, was for undercutting done throughout the construction site. Undercutting is the removal of unsuitable soils and replacement with soil that will properly compact. It is RAD-Razorback's position that the contract included the undercutting and, alternatively, that Coney waived any right to payment by not presenting a claim for extra work, a procedure specifically required by the contract.

Under the contract Coney was to complete three major phases of the development: the construction of a K-Mart store, site preparation for the entire 18 acre shopping center, and all paving. The contract provisions outlining these phases provide only a sketchy description of the work, with references to other documents for specificity. The three primary items of work are described as follows:

A. [Complete construction of the K-Mart store].

B. Site clearing, demolition, excavation, cut and fill, borrow material to bring entire site to subgrades in building and parking areas *including all undercutting of the K-Mart building* as outlined in the soils reports prepared by Southwestern Laboratories, Soils Engi-

neering Division, of Little Rock, Arkansas, dated February 9, 1982 and March 23, 1982, all in accordance with site grading plans. (Our italics).

C. All asphalt paving consisting of 8-inch base and 2½-inch asphalt topping in parking areas and 10-inch base and 2½-inch asphalt topping in heavy-duty areas, *all in accordance with Soils Engineering's recommendations,* including all paving work on Cantrell Road in accordance with Highway Department specifications. (Our italics).

The soils report was incorporated by reference.

In defense of his position, Coney simply quotes Section B, with the unsupported claim that this provision excludes all other undercutting. Coney may be relying on the rule of construction, *expressio unius est exclusio alterius.* 17A C.J.S. Contracts, § 312. ■■ That rule is not overriding, however, and must bow to an examination of the entire transaction which indicates the contrary. *Id.* In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled. The object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement. *Wynn* v. *Sklar & Phillips Oil Co.,* 254 Ark. 332, 493 S.W.2d 439 (1973).

When Section B is examined in isolation, Coney's theory seems correct. While there is no analogous section in the soils report relating to general site preparation, there are two sections in the report that deal with site preparation for construction, and floor slab preparation, both pertinent to the construction of the K-Mart building and both requiring undercutting.

■ But by reading further in Section C we find the paving project also is referenced to the soils report. A reading of the soils report makes it clear under the section devoted to paving that some undercutting is contemplated to properly prepare for the paving. Of the six paragraphs in the paving section, half are devoted to discussion of soil content and measures which must be taken by the contractor to deal with each of those problems,

including undercutting. The other paragraphs deal with recommended thicknesses of the asphalt and base and with the type of stone to be used in the base.

Given the wording from the soils report, it would be difficult to come to any conclusion except that undercutting was included as part of the obligation in the paving section of the contract. This would necessitate undercutting for a large portion of the shopping center, i.e. the parking lot. And under Section B, Coney is expressly responsible for the undercutting of K-Mart. Thus, the contract includes undercutting on the entire project, except for the other building sites, for which Coney was not responsible. Further preparation of the remainder of the site, including the undercutting, is covered by the requirements in the paving section of the contract.

This interpretation effectively harmonizes conflicting clauses and gives a reasonable reading to the entire contract. But even if we rejected that interpretation, based on a finding the language is ambiguous, we would come to the same result. Where a contract is ambiguous, the court will accord considerable weight to the construction the parties themselves give to it, evidenced by subsequent statements, acts and conduct. *Wynn* v. *Sklar, supra; Organized Security Life* v. *Munyon*, 247 Ark. 449, 446 S.W.2d 233 (1969); *Asimos* v. *Reynolds & Sons*, 244 Ark. 1042, 429 S.W.2d 102 (1968). This record reflects that throughout the performance of the contract, Coney did all the undercutting that was required. Not only were there no claims for extra work, there is virtually nothing in the record to indicate the undercutting was of any serious concern to Coney prior to this litigation. Coney insists that complaints were made, but his citations to the record do not bear this out. In fact, Coney admitted that he had never written a letter nor contacted the owner about the undercutting. This position was echoed by his chief superintendent, Charles Toland, who said they had no way to get back to the company and tell the owners about the problem. Yet the evidence shows that throughout the project there were other requests for change orders made by Coney. RAD-Razorback's expert witness, an architect, testified it is in the contractor's best interest to have the change order signed prior to going ahead with work and that the order must be signed before the contractor is completely covered on his expenses. He also testified

that if the contractor proceeded to perform new work covered by an addenda without saying anything to the owners, without protesting, and without asking for a change order, he would assume the contractor accepted the performance of that portion of the work.

In the face of Coney's long experience as a contractor and the $30,000 to $40,000 he was claiming for undercutting, it is difficult to understand why there was neither a change order nor a complaint made for the work he now claims was outside the contract. Even where a contract is ambiguous, the parties will be bound to the construction which they themselves have placed upon it. *Organized Security Life, supra.*

But were we to interpret the contract as Coney urges, we must come to the same view, precluding an award on a quantum meruit basis. The contract contained the standard construction industry provision which requires that a claim for extra work must be made and approved before the work is begun, and without such authorization the contractor cannot recover for that work. No claim was ever made by Coney. Coney's explanation for this omission was that he thought it was the owner's responsibility or that the job was "just moving too fast." Coney testified that he had built three K-Mart stores and about one hundred Wal-Mart stores. From that background it is incredible that Coney would not be fully aware of the consequences of failing to file a work claim for the added compensation he now demands. Nor do we find from the record that this provision in the contract had been waived by previous conduct on the part of RAD-Razorback, as occurred in *Sellers* v. *West-Ark. Construction*, 283 Ark. 241, 676 S.W.2d 726 (1984). The general rule pertaining to construction contracts is, absent a waiver or certain circumstances not evident from the record in this case, if it is required, a request for additional compensation must be in writing and cannot be made after the work is completed. *Ida Grove Roofing* v. *City of Storm Lake*, 378 N.W.2d 313 (Iowa 1985); *Elec-Trol, Inc.* v. *C. J. Kern Contractors*, 284 S.E.2d 119 (N.C. 1981); *Chambless* v. *J.J. Fritch*, 336 S.W.2d 200 (Tex. 1960); 13 Am Jur2d § 22, Building and Construction Contracts; 2 ALR3d, Private Construction Contracts-Extras.

We must conclude on the state of this record and the

arguments presented by RAD-Razorback, the chancellor's finding that the undercutting was not required under the contract is clearly against the preponderance of evidence and, accordingly, we reverse the decree on that point.

### Sewer Compaction Dispute

Another item in dispute involves a sewer easement of the City of Little Rock. The easement crosses the entire site, a distance of some 1,300 feet. During the course of the construction the city decided to replace the sewer line, creating a problem because the city's backfill of the trench did not meet the 95% compaction density required under the contract. RAD-Razorback contends Coney agreed to bring the compaction to contract specifications, and to perform this admittedly "extra work" for $7,500. RAD-Razorback relies on a signed change order which reads as follows:

> Remove excess dirt placed by city installation of sewer line front and parallel with front of K-Mart store and provide compaction of backfill as required in K-Mart paving specification.

The filling of the trench became a long and involved process due to heavy rains, poor drainage and unsuitable soils and Coney claims approximately $80,000 over the original contract for this work.

The chancellor made no specific finding of fact, he simply announced a judgment for Coney. The record consists of seventeen volumes and countless exhibits, abstracted into 300 pages, with few exhibits abstracted. On issues largely involving an accounting, it is impossible to arrive at any definitive conclusions. Thus, on de novo review we cannot determine whether the judgment is supported by the preponderance of the evidence. While it appears that no change order was ever filed by Coney for the amount claimed over the $7,500 assertedly agreed to, we cannot say with certainty what effect that omission may have had in this case. Nor can we tell whether Coney has documented the expenditures he claims.

Ordinarily we try chancery cases de novo from the record and render the decree which should have been rendered below; however, when the record is such that we cannot end the

controversy in this court we will remand that part of the case as justice requires for further proceedings. *Walt Bennett Ford* v. *Pulaski County Special School District No. 213,* 274 Ark. 208, 624 S.W.2d 426 (1981). *Fish* v. *Bush,* 253 Ark. 27, 484 S.W.2d 525 (1972). We are forced to that recourse in this case, leaving to the chancellor whether to make that determination himself or appoint a master for the purpose of taking proof and making a recommendation. The issues remanded are whether the parties agreed this phase of the work would be performed for $7,500 and, if not, what was the cost to Coney of completing the work.

## RAD-Razorback's Claim

After encountering difficulties with Coney over the completion date and Coney's financial problems, RAD-Razorback and Coney agreed to a termination before the completion of the project. Coney acknowledged that RAD-Razorback would be due compensation by back charging for the cost of finishing the project and for any remedial work. RAD-Razorback counterclaimed in this suit for the amount it calculated was due which had not yet been recovered from Coney. The court denied the claim.

On appeal, RAD-Razorback has presented a clear case for recovery on its counterclaim and we find no impediment to that claim. Coney does not dispute that RAD-Razorback is entitled to recovery on the completion and remedial work nor does he specifically challenge the amount. Coney makes several arguments attacking the claim on other grounds, none of which are sufficient to defeat RAD-Razorback's claim.

Coney's primary defense is the issue of undercutting, arguing that since it was not part of the contract, it could not be charged to him. However, as we found undercutting to be included in the work Coney had contracted to do, this argument is without merit. Coney makes several other arguments to attack RAD-Razorback's claim but they are conclusory, unconvincing or unsubstantiated by the proof. RAD-Razorback has presented sufficient evidence to show that the dismissal of its claim was clearly against the preponderance of the evidence.

The decree is reversed as to RAD-Razorback's claim and remanded for further proceedings to establish an accurate

accounting of the amounts due.

### Cross Appeal from the Judgment Awarded River Valley, Inc.

Cross-appellee, River Valley, Inc., subcontracted with Coney to install a waterline and fire hydrants around the shopping center and to install all plumbing work in connection with the K-Mart store. The chancellor found River Valley, Inc. was entitled to a judgment for $33,380.80 for the balance of its subcontract and at an April 1, 1985 hearing Coney acknowledged the validity of the River Valley claim in full.

On appeal Coney asserts a set-off of $275, and a set-off in an amount due Lewis Trenching from River Valley. The latter issue, so far as we can determine, was not presented to the chancellor. River Valley has abstracted a significant portion of the proceedings below to sustain its position that Coney's appeal from that part of the decree is made in bad faith, and solely for delay. The argument is convincing. The decree with respect to River Valley, Inc. is affirmed and in addition to its printing costs of $276.00, counsel for River Valley, Inc. is allowed a fee of $1,750.

### Cross Appeal from the Judgments Awarded to Shrader Construction Company and Shirley's Excavating and Clearing, Inc.

The chancellor found that Shrader Construction Company and Shirley's Excavating and Clearing, Inc., joint subcontractors were entitled to a judgment for $107,369.60 representing the unpaid balance of their subcontract with Coney to perform drainage work in connection with the site. Coney has cross-appealed alleging that it was error to allow the full amount of their claims, that he was due a set-off against the amount claimed. We find no proof to support Coney's position and we have been cited to nothing in the record. It being Coney's burden to demonstrate error, the judgment awarded these cross-appellees is affirmed. *Dale* v. *Sutton*, 273 Ark. 396, 620 S.W.2d 293 (1981); *Poindexter* v. *Cole*, 239 Ark. 471, 389 S.W.2d 869 (1965).

Affirmed in part, reversed in part and remanded.

HOLT, C.J., and PURTLE, J., not participating.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. The appellants are entitled to a trial and a trial court decision. The trial judge acknowledged he could not decide the case because it was too complicated and further time spent would only delay the case anyway. He simply passed it on to us. We are an appellate court and have no authority to weigh evidence and enter findings of fact. We may only review findings of facts already determined.

It is elementary that every litigant is entitled to a trial. The trial judge quite candidly conceded a master or "panel of experts" should have been used. He should have gone one step further. Conceding the trial was beyond him, he should have appointed a master and ordered a new trial or granted a new trial and asked for another judge to hear the case.

We cannot allow a party to have no trial judgment. However disagreeable and difficult, a decision must be made; however wrong it may be, a litigant is entitled to a decision by a trial court. At least then one can use the reasoning and judgment to argue for correction. The appellants have no remedy in this case. A trial court that cannot render a decision has defaulted. A decision by an appellant court without the power to try the case amounts to no decision at all. I would remand this case for a trial.

Supplemental Opinion on Partial Rehearing
September 22, 1986

713 S.W.2d 462

Petition for Rehearing; granted in part and denied in part.

PER CURIAM. In a petition for rehearing Coney argues that the judgment in his favor in the amount of $338,638.00 was admitted by RAD-Razorback to be owed to Coney and that this portion of the judgment should be affirmed. In response, RAD-Razorback admits that it offered to pay that amount but not as a final payment under the contract, for that might mean that it waived its claims against Coney for remedial work and back-charges. RAD-Razorback states that Coney refused to accept the offer. In the circumstances, the judgment in favor of Coney for $338,638.00 is affirmed in the sense that Coney's underlying cause of action for that amount is no longer in issue, but the

affirmance is without prejudice to Rad-Razorback's claims against Coney with regard to other matters.

There having been no petition for rehearing with respect to the judgments in favor of River Valley, Inc., and Shrader Construction Company, Inc., and Shirley Excavating & Clearing Company, Inc., those judgments have become final.

In other respects Coney's petition for rehearing is denied. Hays, J., not participating in the consideration of the case on rehearing.

HOLT, C.J. and PURTLE, J., not participating.