_____

No. 95-3192
_____

Karen Buchanan,                          *
                                         *
    Plaintiff - Appellee,            *
                                         *
v.                                       *
                                         *
Little Rock School District of           *
Pulaski County, Arkansas;                *
Linda Poindexter, Patricia Gee,          *
Judy Magness, Oma Jacovelli,             *   Appeal from the United States
T. Kevin O'Malley, John E.               *   District Court for the
Riggs, IV, Individually                  *   Eastern District of Arkansas
and in their official                    *
capacities as the Board of               *
Directors for the Little Rock            *
School District; Henry                   *
Williams, Individually and in            *
his official capacity as                 *
Superintendent, Little Rock              *
School District;                         *
                                         *
    Defendants - Appellants.         *

_____

Submitted:   April 12, 1996

Filed:   May 28, 1996
_____

Before BEAM and MURPHY, Circuit Judges, and NANGLE,[*] District Judge.
_____

MURPHY, Circuit Judge.

    Karen Buchanan claims her due process rights were violated

_____

    [*]The HONORABLE JOHN F. NANGLE, United States District Judge for the Eastern District of Missouri, sitting by designation.

because she did not receive a hearing in connection with her reassignment from principal of a junior high school to an administrative post. The district court concluded as a matter of law that she had a property interest in her position as principal, and judgment was entered in her favor after a jury trial. The Little Rock School District of Pulaski County, Arkansas (the district), the members of its school board, and its superintendent appeal from the judgment. We reverse.

The facts are essentially undisputed. Buchanan was hired by the district as a teacher in 1985, promoted to assistant principal the following year, and then to principal in 1987. She received an individual contract for each school year. She served as the principal of a number of elementary schools within the district through the 1993-94 academic year and received favorable evaluations.

In April 1994, she signed a contract indicating she would be the principal at Garland Elementary School the following year. The superintendent, Dr. Henry Williams, recommended that she instead take over as principal at Henderson Junior High School, a magnet school troubled by poor student performance and discipline problems. The school board approved the recommendation, and a letter from a district administrator confirmed the transfer early in the summer.

After Buchanan started at Henderson friction developed quickly between her and some of the teachers. At the beginning of the 1994-95 school year, Buchanan reviewed with them the policy manual she had revised over the summer. Apparently a number of teachers were upset that they would no longer be able to use their preparation periods to run errands. Several teachers were angry because they had been moved to different classrooms without being consulted. There were several other unpopular policy changes, such as requiring teachers to record their grades as percentages. The

-2-

school board received a number of complaints, which in turn were reported to Buchanan by Williams. The changes instituted by Buchanan were consistent with district rules, and Williams indicated that he supported her efforts to enforce district policies.

The situation did not improve over the next month, however, and Buchanan had a difficult time with unruly students and disgruntled faculty. Following an incident in which a girl was beaten by other students on a bus, Buchanan told Williams, "Get me out of here." She later changed her mind and said she wanted to stay at Henderson, and Williams provided increased security staff. The tension between Buchanan and the faculty continued. Williams told her that they perceived her as being arbitrary, authoritarian, and insensitive to their concerns. Some teachers were discussing a walkout.

After Williams met with some of the teachers, he told Buchanan to "make peace" with the faculty. Buchanan circulated a survey to pinpoint problems with the faculty, but only six of some seventy teachers responded. She received a list of complaints from teachers on September 16. Three days later she met with the faculty and received a second list of concerns, which was similar to the first. The meeting apparently failed to reduce the tension.

Matters came to a head on September 20, when at least seven teachers apparently participated in a "sickout" and failed to come to work. Williams visited Henderson that day and asked Buchanan to meet with him that evening. Fearing she would be removed from her position, Buchanan retained counsel, who attended the meeting with her.

At their meeting Williams told Buchanan that he had decided to recommend that she be reassigned to another position within the district and explained that his decision was "political." The

school board unanimously approved the recommendation at a regular board meeting on September 22. The board minutes indicate she was "temporarily reassigned." Six other principals and assistant principals were also reassigned at the same time; one became an Acting Assistant Superintendent and another was made an Acting Assistant Vocational Director. The district did not inform Buchanan of any way in which she could air any complaints about the transfer, and Buchanan did not avail herself of the existing grievance procedure.[1]

Buchanan was reassigned to the Office of Student Assignment, where she was encouraged to apply for a new position not yet formally approved. The district planned to divide the responsibilities of the Desegregation Facilitator between the Associate Superintendent for Desegregation and the Director of Student Assignment. Buchanan apparently performed the functions of the latter role, assigning students to schools based on their needs and in accord with the district's extensive desegregation plan. She worked in that capacity for the remainder of the fall 1994 semester and was then assigned to be the acting principal at Garland Elementary School. Garland was the school that had been named on the contract she had signed in April for the school year.

Buchanan filed this action on October 26, 1994, a month after she was transferred from Henderson. The complaint alleged that appellants deprived her of a property interest in her position as principal at Henderson without a hearing and therefore violated her due process rights.[2] Buchanan sought a preliminary injunction

---

[1]Buchanan testified that she did not use the district's established grievance procedure because she had been transferred and the grievance procedure was limited to "suspension, termination, or nonrenewal."

[2]Buchanan also asserted she had been deprived of a liberty interest, but that claim was dismissed for lack of proof at trial and is not at issue on appeal.

returning her to Henderson, which was denied in November 1994. She also sought compensatory damages and a permanent injunction that she be reinstated at Henderson and not removed without due process of law.

The matter was tried before a jury in June 1995. The district court had indicated before trial that it would rule she had a property interest in her position as a principal, and it issued a written order to that effect after trial. The jury returned a verdict in favor of Buchanan and found that she had suffered $50,000 in damages. Injunctive relief was not granted, however. The appellants now seek reversal of the judgment in Buchanan's favor, mainly on the ground that the district court erred in finding a property interest in her position as principal.

An employee has a property interest in employment under the due process clause if she has a "legitimate claim of entitlement" to it. Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Winegar v. Des Moines Independent Community School District, 20 F.3d 895, 899 (8th Cir.), cert. denied 115 S.Ct. 426 (1994). A property interest can be in the entire position or in a specific benefit, but "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." Roth, 408 U.S. at 577. Thus, a claimant must demonstrate that there were "rules or mutually explicit understandings that support [her] claim of entitlement" to her position. Perry v. Sinderman, 408 U.S. 593, 601 (1972).

A protected property interest must be derived from a source independent of the Constitution, such as state law. Drake v. Scott, 823 F.2d 239, 240 n.2 (8th Cir.), cert. denied 484 U.S. 965 (1987). A contract may create a property interest. See Brockell v. Norton, 688 F.2d 588, 590-91 (8th Cir. 1982). "[F]ederal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due

Process Clause."  <u>Memphis Light, Gas, & Water Division v. Craft</u>, 436 U.S. 1, 9 (1978).  Whether the district court's order finding a property interest in the status of principal is construed as a partial summary judgment or a judgment as a matter of law, review is de novo.

The appellants argue that neither Arkansas law nor Buchanan's employment contract created a property interest in a particular assignment.  Buchanan's definition of her claimed property interest has been somewhat unclear.  She originally sought injunctive relief reinstating her as principal at Henderson, but her appellate briefs focus more on her loss of a principal position for the last months of 1994.  At all times, however, she has claimed at least a property interest in the status of a principal based on her contract.[3]

Buchanan's contract for the 1994-95 year, dated April 28, 1994, was entitled a "Teacher's Contract" and stated:  "[Buchanan] agrees to perform services as assigned by Superintendent or Principal."  The next line read: "Primary responsibility" with "Elementary Principal" typed in the following blank.

On the day after Williams told Buchanan he was going to recommend her transfer from Henderson, the school district issued a memorandum authorizing revision of her April contract.  Two changes were indicated. "Henderson Magnet" was entered on a line designated "site," and her salary was increased by $175 because junior high principals were entitled to a larger automobile

---

[3]The parties seem to agree that Buchanan had a property right in a position with the district under Arkansas law.  Thus, had she been terminated or had her transfer amounted to a constructive termination, the due process clause could have been implicated.

allowance.[4]

The district court concluded that Buchanan's contract created a legitimate expectation that she would be a principal for the entire 1994-95 academic year. It reviewed the statutory description of the work of a principal in considering her rights under the contract. The duties of a principal under Arkansas law include "supervis[ing] the operation and management of the school and property . . . ," Ark. Code Ann. § 6-17-302(a), and assuming "administrative responsibility and instructional leadership . . . ." Id. at § 6-17-302(b). The court reasoned that Buchanan was deprived of a contractual right and therefore a constitutionally protected property interest because she no longer performed these functions after her reassignment.

The same Arkansas statute that discusses the work of a principal also provides that those duties will be performed "as the board shall determine necessary," § 6-17-302(a), and "in the area to which he is assigned." § 6-17-302(b). Section 6-17-302(d) goes even further: "The principal shall perform such other duties as may be assigned by the superintendent pursuant to the legal rules and regulations of the board."

These statutory sections do not create a right to remain a principal, especially in light of the transfer provision in Ark. Code Ann. § 6-17-303, which states:

> District school boards shall have authority to assign and reassign or transfer all teachers in schools within their jurisdiction upon the recommendation of the superintendent.

The parties do not dispute that principals are considered teachers

---

[4]There is no contract revision in the record reflecting her transfer from Henderson to the Office of Student Assignment. A revision was made on March 13, 1995 showing her transfer to Garland.

for the purposes of the statute. Since these Arkansas statutes preserve the right of the board and superintendent to determine the assignments for principals, Buchanan cannot have a property interest in her principal status based on them.

Buchanan also argues that the contract and revision explicitly create a property interest in being a principal. Arkansas law requires that contracts be construed in a manner which gives effect to all clauses. RAD-Razorback Ltd. Partnership v. B.G. Coney Co., 713 S.W.2d 462, 465 (Ark. 1986).

> In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled. The object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement.

Id. In her contract Buchanan agreed to "perform services as assigned by the Superintendent." Her "primary responsibility" was identified on the next line of the contract as "elementary principal." To read this as a limitation on the superintendent's power of assignment would go beyond the words of the contract and nullify the assignment clause.

The assignment to Henderson in the September contract revision also contained no express guarantee of the position. It simply stated that Henderson Magnet would be her "site." The duration of the contract was listed as "1994-95," but nothing in the revision implies that she would serve at Henderson for that entire period. This document itself was a revision of her initial contract, and its language does not support a justifiable expectation that she would not be reassigned again.

The customs and practices of the district also do not support her claim. See Winegar v. Des Moines Independent School District,

20 F.3d 895, 899 (8th Cir.), <u>cert. denied</u> 115 S.Ct. 426 (1994). The evidence at trial showed reassignment of principals was not uncommon in the district. Six personnel decisions regarding principals and assistant principals were included in the same school board vote which moved Buchanan from Henderson. The appellants also submitted evidence of prior reassignments of principals. There are no explicit assurances in the record, by contract or otherwise, that Buchanan would necessarily be a principal for the entire year. In light of the language in the contract, its revision, and the context in which the documents were executed, Buchanan could not have had a legitimate expectation that she would necessarily continue to be a principal at Henderson or elsewhere.

The closest Arkansas case to the issue here supports the conclusion that Buchanan had no property right under these circumstances. In <u>Chandler v. Perry-Casa Public Schools District No. 2</u>, 690 S.W.2d 349 (Ark. 1985), a math and computer science teacher was reassigned to teach only computer science. The computer science course ended before the close of the school year, and Chandler thereafter performed only administrative duties. He sued under state and federal law to regain his math position. The Arkansas Supreme Court determined that he had no legal right to the position for "[t]here is no requirement that a teacher be assigned to the duties of his preference or that he consent to transfer or reassignment." <u>Id.</u> at 351.[5] The court also noted that his reassignment was to an important and useful position. <u>Id.</u>

<u>Chandler</u> indicates that Buchanan could not legitimately expect to remain a principal under Arkansas law. Her reassignment was also to an important and useful position. She received the same

---

[5]The court was interpreting Ark. Code Ann. § 80-1234 (repealed), which was the predecessor to Ark. Code Ann. § § 6-17-303, the transfer and reassignment statute discussed <u>supra</u>.

salary and was responsible for significant desegregation and student assignment matters during her months in the Office of Student Assignment. While she was no longer playing the role of a principal, she did retain the title and compensation package. She was made the acting principal of Garland within months, where her compensation remained virtually unchanged.

The conclusion that Buchanan had no property interest in a particular assignment preventing transfer without a hearing is in accord with similar cases from other states. See Raposa v. Meade School District 46-1, 790 F.2d 1349, 1353 (8th Cir. 1986) (teacher did not have a property interest in a specific assignment under South Dakota law); see also Wilson v. Walker, 777 F.2d 427 (8th Cir. 1985) (Air National Guard pilot did not have property interest in flying status and could be transferred without hearing to non-flying post).[6]

Other circuits have concluded school districts may transfer principals under similar circumstances. See Lyznicki v. Board of Education, School District 167, Cook County, Illinois, 707 F.2d 949, 952 (7th Cir. 1983) (principals in Illinois can be transferred "to positions of similar rank and equal salary"); Wooten v. Clifton Forge School Board, 655 F.2d 552, 555 (4th Cir. 1981) (principal could be reassigned to teaching position without hearing where contract was silent and Virginia statute explicitly allowed

---

[6]Buchanan places great emphasis on Winegar v. Des Moines Independent Community School District, 20 F.3d 895 (8th Cir.), cert. denied 115 S.Ct. 426 (1994), but that case is distinguishable. In Winegar, a teacher who had been at the same school for nineteen years was accused of physically abusing a student after the student hit him. Winegar was suspended for several days and transferred. The parties agreed he had a property interest under Iowa law, id. at 899 n.4, and he also had a protected liberty interest because he was stigmatized by the charge against him. The court concluded he was entitled to a hearing, but it acknowledged that a transfer alone would not necessarily implicate due process. Id. at 900.

transfer); <u>Coe v. Bogart</u>, 519 F.2d 10, 12-13 (6th Cir. 1975) (principal could be reassigned to teaching position without hearing under Tennessee law).  A case reaching the opposite result relied on specific rights granted by a Georgia statute and not found in Arkansas law.  <u>See</u> <u>Hatcher v. Board of Public Education and Orphanage for Bibb County</u>, 809 F.2d 1546, 1551-52 (11th Cir. 1987) (principal demoted to teaching position entitled to due process protections because Georgia statute guaranteed position of comparable responsibility, prestige, and salary).

Since there was an insufficient showing as a matter of law that Buchanan had any constitutionally protected property interest in her status as a principal, she was not entitled to the procedural protections of the due process clause.  A hearing was therefore not constitutionally required in connection with her reassignment.  The judgment is reversed.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-